Jonathan STERN, on behalf of himself
and all others similarly
situated, Plaintiff,

v.

LEUCADIA NATIONAL CORPORA-
TION, LNC Investments, Inc., Charter
National Life Insurance Company,
American Investment Company, Leuca-
dia Inc., Uintah National Corporation,
TLC Associates, Carl Marks & Co., Inc.,
Ian N. Cumming, Joseph S. Steinberg,
Cumberg, Inc., Marks Investing Corp.,
and S & S Securities, Inc., Defendants.

No. 86 Civ. 3127 (GLG).

United States District Court,
S.D. New York.

Oct. 7, 1986.

Kaufman Malchman Kaufmann & Kirby, New York City (Irving Malchman, Roger W. Kirby, Lorna N. Graham, of counsel), for plaintiff.

Weil, Gotshal & Manges, New York City (Dennis J. Block, Jonathan M. Hoff, Patricia A. Olah, of counsel), for defendants except Carl Marks & Co., Inc.

Paul, Weiss, Rifkind, Wharton & Garrison, New York City (Sidney S. Rosdeitcher, Shira Perlmutter, of counsel), for defendant Carl Marks & Co., Inc.

GOETTEL, District Judge:

Plaintiff Jonathan Stern brings this putative class action alleging that the defendants violated section 10(b) of the Securities and Exchange Act of 1934 (the "Act"), 15 U.S.C. § 78j(b) (1982), and Rule 10b–5 promulgated thereunder, 17 C.F.R. § 240.-10b–5 (1986), by filing Schedule 13D statements that contained material omissions or misrepresentations. The defendants are seven corporate entities that co-signed the 13D schedules at issue, several other corporations, and two individuals.

The allegations of the complaint are pleaded on information and belief and include the following facts, which we accept as true for purposes of deciding defendants' motions to dismiss: On January 9, 1986, Leucadia National Corp. ("Leucadia") and six other corporate defendants (LNC Investments, Inc.; American Investment Co.; Charter National Life Insurance Co.; Leucadia Inc.; Uintah National Corp.; and TLC Associates), collectively referred to as the "signing defendants," filed a Schedule 13D with the SEC stating that they had purchased or acquired options to purchase 5.26% of GATX Corporation's ("GATX") outstanding shares. The 13D stated that they might seek to take over control of GATX by one of several means, including a merger proposal or tender offer. It also stated that they might dispose of their shares of GATX stock in the open market or privately.

On January 30, 1986, the signing defendants filed an amended 13D in which they declared an increase in their onwership of GATX stock and revealed that they were exploring the possibility of acquiring certain of GATX's assets, in connection with which they had entered into several agreements with GATX: (1) a confidentiality agreement whereby GATX would furnish them with certain information, and (2) a standstill agreement whereby they would not acquire additional stock while the agreement was in force. On February 3, 1986, the defendants filed another amended 13D declaring that the confidential information had been returned to GATX and, thus, both of the above agreements were terminated. On February 12, 1986, defendants filed a third amendment to their 13D disclosing Leucadia's proposed cash merger with GATX for $38/share, subject to various approvals, a due diligence review, and Leucadia's ability to arrange the necessary financing. That offer was rejected. On February 25, 1986, defendants filed a fourth amendment to their 13D noting they now owned 8.86% of GATX stock.

On March 4, 1986, defendants again amended their 13D and stated that GATX had rejected the $38 offer on February 13, but that on February 28, Leucadia had increased its offer to $40/share and entered into a confidentiality agreement with GATX for the latter to furnish Leucadia with additional confidential information for a due diligence review. On March 12, 1986, after completing a diligence review, the defendants once more amended their 13D to indicate that Leucadia continued to be

willing to offer $40 per share, contingent, as before, on its obtaining financing. These developments were reported by the Dow Jones News Service the same day, along with the fact that two other companies had made bids for GATX, one for $40 and one for $42/share. On March 22, GATX accepted Leucadia's offer. However, on March 25, Leucadia requested a one-week extension before entering into a definitive merger agreement, claiming that, since certain GATX debts would come due immediately in the event of a merger, it needed time to arrange for additional financing. GATX refused to grant this request and the deal fell through.

The plaintiff claims that the signing defendants never intended to go through with the merger and were merely manipulating the market price of the stock. The complaint alleges that the defendants "intentionally omitted from the ... Schedule 13Ds the material fact that it was [their] basic and primary purpose ..., after inflating the market price, either to sell GATX's stock back to GATX for a substantial premium above market price or to sell such stock to another bidder for GATX at a substantial premium above market price." Complaint ¶ 29. It is not alleged that the defendants sold their stock to GATX, or anyone else, for a substantial premium. Indeed, it was conceded that the stock was held for a period of time, then sold in the market at a loss.

The plaintiff asserts that prior to the alleged scheme GATX stock was selling for approximately $34 per share. The plaintiff purchased GATX stock on March 3, 1986, for $41.50 per share. Plaintiff sold his stock on April 8, 1986, at $35.25 per share. He claims the defendants' allegedly fraudulent merger proposals caused the price of GATX stock to rise during January, February, and March 1986, and then fall substantially once their deal fell through. The plaintiff purports to represent a class of all those who purchased stock in GATX between January 9, and March 26, 1986.

In addition to the signing defendants, the other named defendants are several corporations and two individuals, Ian N. Cumming and Joseph S. Steinberg. The complaint alleges that Cumming and Steinberg, along with Leucadia, are "controlling persons" of the corporate defendants, except perhaps Carl Marks & Co., Inc. ("Carl Marks"). The complaint sets forth a rather confusing description of interlocking ownership of the various corporations. The ownership of Leucadia and the other signing defendants is traced back to Cumming, Steinberg, and a corporation called Cumberg, Inc. The latter is allegedly owned by the two individuals and the last two corporate defendants, S & S Securities and Marks Investing Corp. ("MIC"). MIC is alleged to be partly owned by the same two individuals, partly owned by Leucadia, and partly owned by defendant Carl Marks. The complaint does not allege what proportionate share each owns, or if they represent all or only some of the owners of MIC.

All defendants now move to dismiss the complaint pursuant to Fed.R.Civ.P. 12(b)(6) and 9(b), for failure to state a claim upon which relief can be granted and for failure to plead fraud with particularity. Carl Marks moves separately as well, arguing that, even if upheld as to the other defendants, the complaint fails to state a claim against it.

 A cause of action under section 10(b) of the Act and Rule 10b–5 promulgated thereunder must allege "that, [1] in connection with the purchase or sale of securities, [2] the defendant, acting with scienter, [3] made a false material representation or omitted to disclose material information and [4] that plaintiff's reliance on defendant's actions caused him injury." *Bloor v. Carro, Spanbock, Londin, Rodman & Fass,* 754 F.2d 57, 61 (2d Cir.1985). Furthermore, a claim of securities fraud must satisfy the pleading requirements of Rule 9(b) of the Federal Rules of Civil Procedure. Thus, a plaintiff must "allege the existence of facts and circumstances sufficient to warrant the pleaded conclusion that fraud [ ] occurred." *Decker v. Massey-Ferguson, Ltd.,* 681 F.2d 111, 119 (2d Cir.1982). *See Luce v. Edelstein,* 802

F.2d 49, 54 n. 1 (2d Cir.1986). "[D]istorted inferences and speculations" will not suffice. *Segal v. Gordon,* 467 F.2d 602, 606 (2d Cir.1972). *See Shamrock Associates v. Horizon Corp.,* 632 F.Supp. 566, 571–72 (S.D.N.Y.1986). The defendants argue that the plaintiff fails to adequately allege the element of material misrepresentation or omission, and the element of reliance and causation.

■ The complaint sets forth statements made by the signing defendants in their original Schedule 13D filing and the many amendments thereto. The Schedule 13D and amendments specified a variety of possible actions that the defendants were considering, including possible takeover of GATX or sale of all their stock. The plaintiff alleges that defendants never intended even the possibility of a takeover and, accordingly, materially misrepresented their intentions. However, the complaint fails to state facts that support its conclusory allegations that Leucadia's intentions to pursue its merger proposals were not genuine. *See Luce v. Edelstein, supra,* at 54–55. Some of the facts pleaded actually weaken the plaintiff's allegations against these defendants. Every 13D filing by the signing defendants was conditional. The early filings noted the possibility of selling stock as well as of seeking control of GATX. Later filings stated that Leucadia's offers were contingent on arranging financing, getting shareholder approval, etc. Furthermore, Leucadia hired a financial advisor to consider the possible cash merger, agreed to restrictions on its sale of GATX stock while a merger was being explored, and negotiated an agreement with Merrill Lynch whereby Leucadia would pay Merrill Lynch a $400,-000 penalty if Leucadia sold more than 51% of its stock in GATX. None of these facts support the plaintiff's conclusory allegation that Leucadia never intended to follow through on a merger or takeover bid for GATX.

On the other hand, as noted earlier, no allegation is made that Leucadia ever sold or attempted to sell its GATX stock when its deal evaporated. Leucadia, we note, did not withdraw its offer. Rather, when GATX accepted Leucadia's offer of $40 per share, Leucadia asked for a one-week extension of time to arrange additional financing. As the signing defendants' 13Ds had always stated, the bid for GATX was contingent on, *inter alia,* Leucadia's ability to arrange financing. GATX rejected the request for additional time and the deal collapsed.

■ The plaintiff also fails to adequately plead the element of reliance and causation. "[C]ourts will presume reliance only when it is logical to do so." *Reingold v. Deloitte Haskins & Sells,* 599 F.Supp. 1241, 1263 (S.D.N.Y.1984). Here, it is not. The plaintiff paid $41.50 per share for GATX stock at a time when Leucadia had only offered $40 per share. This hardly demonstrates reliance by the plaintiff on Leucadia's bid. If anything, the plaintiff may have been hoping that a bidding war would ensue and that the GATX stock would rise above the price at which he bought it. However, this does not state a claim for fraud against these defendants. In addition, the defendants' 13Ds at all times stated that Leucadia's offer was subject to a number of contingencies, including its ability to arrange financing. One news report stated that Leucadia thought it was highly likely it would be able to get the necessary financing. Still, we do not find it logical or reasonable for the plaintiff to rely on this single, hopeful report as the basis for his purchase. This is especially true when, as in this case, the plaintiff is well acquainted with the mercurial nature of the stock market.

■ The plaintiff next argues that Leucadia's actions created a fraud on the market, driving up the price of GATX stock by proposing a merger while actually intending to sell out at a premium once the price went up. However, Leucadia was not the only company bidding for GATX. No facts are stated that suggest that these defendants' actions, as opposed to the acts of the other bidders, caused the increase in the price of GATX stock. And, as already mentioned, the plaintiff does not allege

that the defendants sold their GATX stock, for a premium or otherwise. We find, therefore, that the plaintiff has failed to state a claim upon which relief can be granted against the signing defendants. The complaint is likewise deficient against defendants Cumming, Steinberg, Cumberg Inc., S & S Securities, and MIC, since any claim against them rests solely upon the vague allegation that they either control or are part of an interlocking network of corporations affecting the management of the signing defendants.

The only "act" allegedly committed by Carl Marks is its filing of a Schedule 14B on February 18, 1986, stating that it was considering a proxy solicitation regarding GATX, and its amendment of that 14B on March 20, 1986, withdrawing its consideration of such a plan. No facts alleged imply that these statements contained false or misleading material facts. The plaintiff nevertheless attempts to tie this thread into the gossamer web of conspiracy allegedly being woven by all of the defendants to inflate the market price for GATX stock. The fact that Carl Marks owned some portion of stock in MIC, which owned some portion of stock in Cumberg, Inc., which owned some portion of stock in a chain of corporations including Leucadia, does not reasonably lead to the inference that the filing and amending of 14B statements by Carl Marks was intended for any other than the stated purpose. Carl Marks owned a substantial interest in GATX, a greater interest than its attenuated connection with Leucadia. It is hard to imagine that Carl Marks intended to boost the value of its GATX stock by some roundabout means rather than proceed directly, as it did, to explore the possibility of taking action within GATX by a proxy solicitation.

We reach the same result regarding the plaintiff's claim that Carl Marks acted as an aider and abettor or conspirator of the other defendants. In order to state a claim of aiding and abetting, the plaintiff must allege that Carl Marks had knowledge of other defendants' violation of the securities laws, and provided substantial assistance to them. *IIT, an International Investment Trust v. Cornfeld*, 619 F.2d

909, 922 (2d Cir.1980). The facts noted above, which are the only ones alleged regarding Carl Marks, are inadequate to state such a claim. The elements of a claim of conspiracy to violate the securities laws are "(1) an agreement between the conspirator and the wrongdoer, and (2) a wrongful act committed in furtherance of the conspiracy." *Whitbread (US) Holdings, Inc. v. Baron Philippe De Rothschild, S.A.*, 630 F.Supp. 972, 983 (S.D.N.Y. 1986). Again, no facts are alleged that support this claim. Other than stating the relationship between the various corporations, the plaintiff makes no allegation of meetings or agreements among Carl Marks and any other defendants. The plaintiff's conclusory allegation of conspiracy is unsupported by his pleading.

Charges of fraud, including securities fraud, are a serious matter and should not be made lightly or upon speculative inferences of inappropriate intentions. Rather, such claims must set forth specific, well-pleaded facts. Accordingly, we grant both motions to dismiss the complaint, with leave to replead in twenty (20) days, if such repleading can allege sufficient facts upon which the allegations rest.

SO ORDERED.