Jonathan STERN, on behalf of himself and all others similarly situated, Plaintiff–Appellant,

v.

LEUCADIA NATIONAL CORPORATION, LNC Investments, Inc., Charter National Life Insurance Company, American Investment Company, Leucadia Inc., Uintah National Corp., TLC Associates, Carl Marks & Co., Inc., Ian N. Cumming, Joseph S. Steinberg, Cumberg, Inc., Marks Investing Corp. and S & S Securities, Inc., Defendants–Appellees.

No. 1214, Docket 87–7211.

United States Court of Appeals, Second Circuit.

Argued June 8, 1987.

Decided April 20, 1988.

Roger W. Kirby, New York City (Kaufman Malchman Kaufmann & Kirby, New York City, of counsel), for plaintiff-appellant.

Dennis J. Block, New York City (Jonathan M. Hoff, Donald E. McKnight, Jr., Weil, Gotshal & Manges, New York City, of counsel), for defendants-appellees Leucadia Nat. Corp., LNC Investments, Inc., Charter Nat. Life Ins. Co., American Inv. Co., Leucadia, Inc., Uintah Nat. Corp., TLC Associates, Carl Marks & Co., Inc., Ian N. Cumming, Joseph S. Steinberg, Cumberg, Inc., Marks Investing Corp., and S & S Securities, Inc.

Paul, Weiss, Rifkind, Wharton & Garrison, New York City, for defendant-appellee Carl Marks & Co., Inc.

Before KEARSE, ALTIMARI and MAHONEY, Circuit Judges.

MAHONEY, Circuit Judge:

Jonathan Stern brought this action on behalf of himself and a class of investors who purchased common stock of the GATX Corporation ("GATX") between January 9, 1986 and March 26, 1986, inclusive. Stern complained that defendants violated Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b) (1982) ("Section 10(b)"), and Rule 10b–5 promulgated thereunder, 17 C.F.R. § 240.10b–5 (1987) ("Rule 10b–5"), by leading the investing public to believe that defendant Leucadia National Corporation ("Leucadia National") would merge with GATX, when in fact defendants sought only to inflate artificially the market price of GATX common stock, and thereafter to sell off their shares at a substantial profit.

Defendants moved to dismiss the complaint pursuant to Fed.R.Civ.P. 9(b) and 12(b)(6). The United States District Court for the Southern District of New York, Gerard L. Goettel, *Judge,* granted the motion, according plaintiff leave to replead within twenty days. *Stern v. Leucadia Nat'l Corp.,* 644 F.Supp. 1108 (S.D.N.Y. 1986). Upon the filing of the amended complaint, defendants moved to dismiss on the same grounds as before; in addition, defendants requested that sanctions be awarded under Fed.R.Civ.P. 11. By endorsement, the district court granted defendants' second motion to dismiss and awarded Rule 11 sanctions with respect to that motion.

Stern appeals. We affirm as to the dismissal, and reverse as to the sanctions.

## I. BACKGROUND

Except for the allegations pertaining to Jonathan Stern and his counsel, plaintiff's amended complaint is pleaded entirely upon information and belief. In view of our disposition of this appeal, we assume the truth of his allegations. *See DiVittorio v. Equidyne Extractive Indus. Inc.,* 822 F.2d 1242, 1244, 1247 (2d Cir.1987), and cases there cited.[1]

### A. The Defendants.

Stern alleges that defendants Ian N. Cumming and Joseph S. Steinberg control an interlocking network consisting of the corporate defendants, as follows. Cumming, Steinberg, Marks Investing Corp. ("MIC") and S & S Securities, Inc. ("S & S") are the owners of Cumberg, Inc. ("Cumberg"). Cumberg, Cumming and Steinberg own TLC Associates ("TLC"), a New York general partnership. In turn, TLC owns all of the outstanding shares of defendant Uintah National Corporation ("Uintah"), which owns 48% of the outstanding shares of Leucadia National, which owns all of the outstanding shares of Leucadia Inc. ("Leucadia"), which owns all of the outstanding shares of LNC Investments, Inc. ("LNC") and 94% of the outstanding shares of defendant American Investment Company ("AIC"), which owns all of the outstanding shares of defendant Charter National Life Insurance Company ("Charter"). Cumming, Steinberg and Leucadia own more than half of MIC's outstanding shares; Cumming and Steinberg own an unspecified percentage of S & S' shares; and defendant Carl Marks & Co., Inc. ("Carl Marks") owns an unspecified portion of MIC.

Stern alleges that defendants conspired with, and aided and abetted, one another in violating Section 10(b) and Rule 10b–5, and that Leucadia National, Cumming and Steinberg were each a controlling person of each of the other defendants (except possibly Carl Marks) within the meaning of Sec-

---

**1.** We note in this regard that the district court's dismissal of the amended complaint placed no reliance on the fact that virtually all of plaintiff's allegations were stated upon information and belief, nor do appellees urge the point here. The general rule (with certain exceptions), however, which we discuss in more detail hereinafter, is that fraud allegations premised upon information and belief do not satisfy Rule 9(b). Our consideration of appellant's claims on the merits under the circumstances of this appeal should not be construed to undermine that general rule, or to condone the practice of pleading virtually an entire fraud complaint upon information and belief.

tion 20(a) of the Securities Exchange Act of 1934, 15 U.S.C. § 78t(a) (1982).

B. *The Allegations of the Amended Complaint.*

In light of our view of the noncompliance of plaintiff's amended complaint with Fed. R.Civ.P. 9(b), it is appropriate to outline the allegations of that complaint in some detail. That outline follows.

### The Events

On January 9, 1986, Leucadia National, LNC, AIC, Charter, LI, Uintah and TLC (collectively the "Leucadia group") filed a Schedule 13D statement [2] with the Securities and Exchange Commission reporting that they had purchased, or had acquired options to purchase, 5.26% of GATX's outstanding shares. The statement indicated that the Leucadia group deemed GATX's common stock undervalued, and might seek control of GATX. Preliminary to any such determination, the group stated it might explore the feasibility of various strategies for gaining control, including: (1) merger; (2) acquisition of additional GATX common or preferred stock (subject to its availability at favorable prices and the availability of any requisite financing) in open market or privately negotiated purchases, by tender offer, or otherwise; (3) solicitation of proxies to elect its nominees as directors of GATX; or (4) joining forces with interested third parties to obtain control of GATX. The group noted that, depending upon the course it chose, it might dispose of shares of GATX common stock in the open market, in privately negotiated transactions, or otherwise. The statement cautioned, however, "that the possible activities of [the Leucadia group] are subject to change at any time and there is no assurance that [it] will actually purchase any additional shares of the Common Stock or

any shares of preferred stock or seek to influence or obtain control of [GATX]." The same day, the Dow Jones News Service ("DJNS") reported the Leucadia group's stake in GATX and its plans with respect thereto as described above. On January 10, GATX common closed at $38½ on the New York Stock Exchange ("NYSE"), up $3⅝ from its closing price the day before.

On January 30, 1986, the Leucadia group filed the first of seven amendments to the Schedule 13D statement, noting that, through the purchase of stock and options, it had increased its stake in GATX to 6.3% of the latter's outstanding shares, and stating that it was "exploring the possibility of acquiring certain of [GATX's] assets...." The amendment further reported that in connection with this exploration, the Leucadia group had entered into a confidentiality/standstill agreement with GATX on January 28 pursuant to which GATX provided certain confidential information to Leucadia; in return, the group was to freeze its stake in GATX and refrain from acquiring any additional GATX stock or acting in concert with any third party to acquire voting securities or control of GATX from the date of the agreement until twenty-four hours following destruction or return of the information furnished to the Leucadia group pursuant to the agreement.

The second amendment to the Schedule 13D statement was filed on February 3,[3] reporting that the Leucadia group's stake in GATX had not changed, but it had destroyed or returned all information furnished under the confidentiality/standstill agreement on February 6, thus terminating its obligations thereunder as of February 7.

Amendment number three, filed February 12, announced that the Leucadia group had on February 11 proposed a cash merger with GATX pursuant to which the lat-

---

**2.** 17 C.F.R. § 240.13d–1 (1987) requires the filing of a statement with the Securities and Exchange Commission, *inter alia,* by any person acquiring more than five percent beneficial ownership of certain classes of equity securities, which statement must contain the information specified in 17 C.F.R. § 240.13d–101 (1987), which consists of Schedule 13D and related instructions. Material changes in the facts set

forth in the original statement must be reported promptly. 17 C.F.R. § 240.13d–2(a) (1987).

**3.** The original and amended complaints both allege this date of filing, but the amendment recites as a *past* event the return of the confidential information on February 6.

ter's common stockholders would receive at least $38 per share. The group also announced that, in the alternative, it was prepared to discuss a transaction whereby GATX would distribute its capital equipment leasing business to its shareholders and the cash merger price would be reduced by an agreed amount. The amendment stated that consummation of the transaction "would be subject to negotiation, preparation and execution of a definitive merger agreement, the requisite regulatory approvals, satisfactory completion by Leucadia of diligence (which it would be prepared to commence promptly) and Leucadia [National's] arrangement of requisite financing." GATX responded on February 13, that it would consider any "specific bona fide proposal" made by the Leucadia group, and would provide the group with non-public information concerning GATX subject to a confidentiality agreement.

The Leucadia group filed the fourth amendment to its Schedule 13D statement on February 25, announcing that it owned 8.86% of GATX's outstanding shares. Three days later, DJNS reported that Leucadia National had raised its bid for GATX to $40 per share and that Merrill Lynch Capital Markets ("Merrill Lynch"), retained by Leucadia National as its financial advisor to assist in obtaining the necessary financing for the $40 per share bid, was "highly confident" that it could obtain the requisite financing. DJNS also reported that GATX had announced another $40 per share offer from a third party, and a "conditional" offer of $42 per share in cash and notes from still another third party.

Amendment number five to the Schedule 13D statement, filed on March 4, 1986, indicated no change in Leucadia's ownership of GATX's outstanding shares. It reported, however, the increase in the proposed merger price to $40. Again, the Leucadia group stated that consummation of its cash merger proposal was subject to the conditions previously stated in Amendment No. 3, to which was added the approval of GATX's shareholders. Amendment No. 5 also announced the retention of Merrill Lynch as the Leucadia's group financial advisor, and quoted Merrill Lynch's "high[ ] confiden[ce]" in its ability to obtain the necessary financing for the merger. The Leucadia group also disclosed that it had entered into another confidentiality agreement with GATX dated February 28, 1986, pursuant to which GATX was to provide the group with certain confidential information, and the group was to refrain for two years from acquiring more than twenty percent of GATX's outstanding common stock, proposing a business combination transaction relating to GATX (unless invited to do so by GATX), soliciting any GATX proxies, or acting in concert with any third party with respect to an acquisition of GATX, its securities or its assets, or to the holding, voting or disposition of GATX's securities. The amendment further stated that the agreement called for completion of the Leucadia group's due diligence review no later than March 29, 1986, and provided that the foregoing restrictions would terminate if GATX failed to enter into a definitive merger agreement with Leucadia within ten days after Leucadia completed its due diligence review and advised GATX of its continued willingness to consummate the merger. Finally, Amendment No. 5 reported that Leucadia had committed to pay Merrill Lynch a "transaction fee not to exceed $400,000" if, prior to March 1, 1987, the Leucadia group received consideration for at least 51% of its holdings of GATX common stock.

On March 14, 1986, the Leucadia group filed the sixth amendment to its Schedule 13D statement reporting that two days earlier, Leucadia National had notified GATX of the completion of Leucadia National's diligence review and its continued willingness to consummate a cash merger at $40 per share. That same day, DJNS reported that GATX would respond to Leucadia's merger proposal by March 22. "In the meantime," according to the DJNS report, GATX would continue "to actively pursue acquisition discussions with other interested parties."

On March 24, DJNS and the *Wall Street Journal* reported GATX's acceptance of Leucadia's cash merger proposal. The reports repeated that the merger was contin-

gent on GATX shareholder approval and Leucadia's ability to obtain financing, and that Merrill Lynch was "highly confident" that the necessary financing could be obtained. According to the reports, the deadline for completing the definitive merger agreement was midnight on March 25, 1986.

On March 31, 1986, the Leucadia group filed the seventh and last amendment to its Schedule 13D statement, disclosing information which had already been reported by DJNS and the *Wall Street Journal* on March 26 and 27. The amendment stated that on March 25, Leucadia National had advised GATX that Leucadia National would require additional time to determine whether to proceed with the transaction because it had become evident that day that certain additional financing would be required; that Leucadia National had requested a seven day extension for consummation of a definite merger agreement; that GATX had refused that request on March 27; and that the Leucadia group would continue to evaluate the situation, and would specifically consider making another merger proposal to GATX, acquiring additional GATX common stock, or disposing of its holdings of GATX common stock.

Leucadia National stated that its need for additional financing and time arose from its sudden discovery, on March 25, that a merger with GATX would trigger a requirement that some of the latter's debt be paid on an accelerated basis.

### The Allegations of Fraud

Plaintiff claims, however, that Leucadia never intended to merge with or otherwise acquire GATX, and never intended to seek additional financing during the requested extension. Plaintiff maintains that Leucadia's eleventh-hour discovery that additional financing would be necessary was "merely a pretext because Leucadia had long been in possession of all of GATX's debt documents and the alleged informa-

tion suddenly discovered by Leucadia was not new or unusual...."

Plaintiff also alleges that on or about February 18, 1986, Carl Marks, a direct and indirect owner of a significant number of GATX shares, filed a Schedule 14B statement [4] with the Securities and Exchange Commission which indicated that Carl Marks was considering a proxy contest respecting GATX. On March 20, Carl Marks filed an amendment to the Schedule 14B statement indicating it would not go forward with such a solicitation. Plaintiff alleges that these filings were a bogus device "to create the impression that defendants were earnestly seeking control of GATX."

Stern alleges that the defendants conspired, and aided and abetted one another, to create the impression, via their filings, that GATX was genuinely "in play," when in fact defendants intended only to inflate the market price of GATX's stock, and thereafter to extract greenmail from GATX or sell their holdings to another bidder for GATX at a premium. Thus, according to plaintiffs, defendants violated Section 10(b) and Rule 10b–5 because their filings, replete with material misstatements and omissions, led "the reasonable investor to believe that, subject to certain essentially mechanical conditions, defendants would seek to merge with GATX when in truth defendants had no genuine intention of carrying out the merger even were the announced conditions were [sic] met."

Plaintiff purchased his shares of GATX on March 3, 1986 at $41.50 per share. He sold his shares for $35.25 on April 8, 1986.

### C. *Action by the District Court.*

The district court dismissed Stern's original complaint, finding that it failed adequately to allege "the element of material representation or omission, and the element of reliance and causation," 644 F.Supp. at 1111, with respect to the Leucadia group; that the claim against the other defendants

---

**4.** 17 C.F.R. § 240.14a–11(c) (1987) requires that each participant in a proxy solicitation subject to section 240.14a–11 (relating to proxy contests) file a statement with the Securities and Exchange Commission, *inter alia,* containing the information specified by Schedule 14B, which in turn is set forth in 17 C.F.R. § 240.14a–102 (1987). Material changes in the facts set forth in the original statement must be reported promptly. 17 C.F.R. § 240.14a–11(c)(5) (1987).

(with the exception of Carl Marks) rested "solely upon the vague allegation that they either control or are part of an interlocking network of corporations affecting the management of the signing defendants," 644 F.Supp. at 1112; and, as to Carl Marks, that plaintiff failed to allege facts indicating that Carl Marks' Schedule 14B filings "contained false or misleading material facts," or that Carl Marks conspired with, or aided or abetted, the other defendants, 644 F.Supp. at 1112.

The district court granted leave to amend within twenty days, "if such repleading can allege sufficient facts" in support of Stern's allegations. 644 F.Supp. at 1112. Plaintiff filed his amended complaint, which was very similar to the first, but contained some new matter, consisting essentially of (1) further elaboration concerning the alleged purpose of defendants' statements and omissions; (2) summaries and quotations of news reports and commentaries concerning defendants' bid for GATX, some of which referred to other occasions on which Leucadia National had assertedly received greenmail from corporate targets; (3) allegations that the Leucadia group had long known, because of its possession of the relevant GATX documents, that the accelerated payment of certain GATX debt would be required as a result of the merger, and its request for additional time to arrange financing was accordingly a pretext; and (4) an allegation concerning the increase in the price of GATX's common stock as a result of the initial filing of the Leucadia group's Schedule 13D statement.

Defendants renewed their motions to dismiss and requested sanctions. At the hearing on this motion, Judge Goettel announced that he would grant the motion to dismiss "entirely on the original opinion" and, deeming the amended complaint "repetitious", would "grant Rule 11 sanctions as to the costs for making the second motion to dismiss, but only the second motion." A corresponding endorsement was then entered. Upon application, Rule 11 sanctions were awarded in the amount of $7,500.00 for legal fees.

This appeal followed.

## II. DISCUSSION

On appeal, Stern contends that the district court's Rule 12(b)(6) ruling improperly implicated factual issues more appropriately resolved on the merits by the trier of fact; that the complaint complied with Rule 9(b); and that sanctions were improperly imposed. We need address only the latter two contentions.

### A. *The Sufficiency of the Complaint under Rule 9(b).*

As this court has recently observed, Fed. R.Civ.P. 9(b) is designed to further three goals: (1) providing a defendant fair notice of plaintiff's claim, to enable preparation of a defense; (2) protecting a defendant from harm to his reputation or goodwill; and (3) reducing the number of strike suits. *DiVittorio v. Equidyne Extractive Indus., Inc.*, 822 F.2d 1242, 1247 (2d Cir.1987) (citing *Reingold v. Deloitte Haskins & Sells*, 599 F.Supp. 1241, 1266 (S.D.N.Y.1984)); *see also* 5 C. Wright & A. Miller, Federal Practice and Procedure § 1296, at 399–400 (1969 & Supp.1987).

The Rule 9(b) balance has been struck in a number of ways. Thus, fraud pleadings generally cannot be based on information and belief. *DiVittorio*, 822 F.2d at 1247; *Segal v. Gordon*, 467 F.2d 602, 608 (2d Cir.1972). On the other hand, fraud allegations may be so pleaded as to facts peculiarly within the opposing party's knowledge; even then, however, the allegations must be accompanied by a statement of facts upon which the belief is founded. *See Luce v. Edelstein*, 802 F.2d 49, 54 n. 1 (2d Cir.1986); *Schlick v. Penn–Dixie Cement Corp.*, 507 F.2d 374, 379 (2d Cir. 1974), *cert. denied*, 421 U.S. 976, 95 S.Ct. 1976, 44 L.Ed.2d 467 (1975); *Segal v. Gordon*, 467 F.2d at 608; *Equitable Life Assurance Soc'y v. Alexander Grant & Co.*, 627 F.Supp. 1023, 1029 (S.D.N.Y.1985); 5 C. Wright & A. Miller, Federal Practice and Procedure § 1298, at 416 (1969). *See also Devaney v. Chester*, 813 F.2d 566, 568 (2d

Cir.1987); *Connecticut Nat'l Bank v. Fluor Corp.*, 808 F.2d 957, 961–62 (2d Cir. 1987). Further, Rule 9(b) permits "[m]alice, intent, knowledge, and other condition of mind" to be "averred generally." In this regard, we have noted that it would be unworkable and unfair to require great specificity in pleading scienter, since "a plaintiff realistically cannot be expected to plead a defendant's actual state of mind." *Connecticut Nat'l Bank v. Fluor Corp.*, 808 F.2d at 962 (citing *Ross v. A.H. Robins Co.*, 607 F.2d 545, 558 (2d Cir.1979), *cert. denied,* 446 U.S. 946, 100 S.Ct. 2175, 64 L.Ed.2d 802 (1980)); *see also Goldman v. Belden,* 754 F.2d 1059, 1070 (2d Cir.1985); 5 C. Wright & A. Miller, Federal Practice and Procedure § 1301, at 426 (1969). Nonetheless, circumstances must be pleaded that provide a factual foundation for otherwise conclusory allegations of scienter. *See, e.g., Connecticut Nat'l Bank v. Fluor Corp.,* 808 F.2d at 962; *Ross v. A.H. Robins Co.,* 607 F.2d at 558.

■ Judged by these standards, we have no difficulty agreeing with the court below that Stern's amended complaint does not pass muster under Rule 9(b). It contains little by way of embellishment of the bald allegation that "Leucadia never had any intention of merging or otherwise acquiring GATX, never had any intention of merging or otherwise acquiring GATX at a price equivalent to $40 per share, [and] never had any intention of utilizing the requested extension to seek additional financing." It is not enough to quote press speculation about defendants' motives and press reports of other occasions on which Leucadia National assertedly obtained greenmail from other corporate targets. Nor does it suffice to assert conclusory suspicions as to defendants' motives based solely upon the fact that they had GATX's loan agreements for a considerable period of time before concluding that certain of their provisions would require additional financing for the proposed merger. Such allegations simply do not provide the "specific, well-pleaded facts" upon which Judge Goettel correctly insisted in offering plaintiff an opportunity to replead its complaint. *See* 644 F.Supp. at 1112.

As the district court pointed out, furthermore, many of Stern's allegations undercut his claim of fraud. For example, (1) the Leucadia group's Schedule 13D statements were all conditional; (2) the earlier filings indicated that Leucadia might dispose of its stock instead of attempting to gain control of GATX; (3) later filings noted that Leucadia National cash merger proposal depended upon, *inter alia,* arrangement of financing and acquisition of shareholder approval; and (4) Leucadia National agreed to pay Merrill Lynch a substantial fee if it sold more than 51% of its holdings in GATX. *See generally* 644 F.Supp. at 1111. Finally, Leucadia National never called off the merger; it asked GATX for a brief extension of time to obtain additional financing, which GATX declined to provide.

We conclude that the district court correctly dismissed plaintiff's amended complaint for failure to comply with Fed.R. Civ.P. 9(b).

**B. *The Award of Sanctions.***

Since we are not concerned with the specifics of the district court's award, the scope of our review is not confined by the abuse of discretion standard. *See Eastway Constr. Corp. v. City of New York,* 821 F.2d 121, 122 (2d Cir.), *cert. denied,* ⸺ U.S. ⸺, 108 S.Ct. 269, 98 L.Ed.2d 226 (1987); *Eastway Constr. Corp. v. City of New York,* 762 F.2d 243, 254 n. 7 (2d Cir. 1985). Rather, "[w]here the only question on appeal becomes whether, in fact, a pleading was groundless [or, for purposes of this case, made no serious effort to satisfy Rule 9(b)], we are in as good a position to determine the answer and, thus, we need not defer to the lower court's opinion." *Eastway,* 762 F.2d at 254 n. 7.

■ We have two difficulties with the district court's imposition of sanctions. First, a dismissal with leave to replead is not a final order that is immediately appealable. *Blanco v. United States,* 775 F.2d 53, 56 (2d Cir.1985); *Cory Bros. & Co. v. United States,* 47 F.2d 607 (2d Cir.1931); *see* 9 J. Moore, B. Ward & J. Lucas, *Moore's Federal Practice* ¶ 110.08[1], at

115 n. 27 (2d ed. 1987). In order to appeal, the plaintiff would have to forego the leave to replead granted him, either by allowing the deadline for repleading to pass or by having the court revoke that leave and enter a final judgment. We disagree with the suggestion that a plaintiff should be penalized for taking the option given him by the court to attempt to replead in a way designed to cure flaws found in his complaint by the court.

■ Second, since leave to replead was granted for the purpose of adding factual matter in an effort to comply with Rule 9(b), sanctions should not have been granted simply because the amended complaint was "repetitious." Where a party's complaint has been dismissed for failure adequately to set forth an element of his claim, and he has been given leave to replead in an effort to cure the deficiency, it is to be expected that the amended complaint will repeat the other allegations found in the original complaint. Indeed, without repetition of many of the original allegations, the amended complaint would fail to state a claim even if the original defect were cured.

■ The plaintiff here did not simply refile the original complaint unchanged. Thus, instead of focusing on the original allegations, the district court should have focused on whether the new allegations met the standards we have fashioned with respect to Rule 11.

Following its dismissal of Stern's original complaint, the district court granted leave to replead "if such repleading can allege sufficient facts upon which the allegations rest." 644 F.Supp. at 1112. Plaintiff's amended complaint set forth very little in the way of additional facts to support his claim of securities fraud.[5] The district court accordingly stated, at the hearing on the motion to dismiss the amended complaint:

> With respect to Rule 11, the teaching of the Second Circuit is that we should not discourage creativity. Mr. Kirby is a very creative person. The first complaint here was quite creative. It didn't march with me, but there are certain judges in the Second Circuit who would see it as being a possible securities fraud claim. And he may ultimately prevail on appeal.
>
> However, the refiling of the complaint, rather than simply appealing the earlier dismissal, was repetitious. I don't know that we have to put up with repetition, and consequently, I grant Rule 11 sanctions as to the costs for making the second motion to dismiss, but only the second motion.

We are persuaded that the district court erred in awarding sanctions. As this court has previously noted, sanctions shall be imposed "when it appears that a pleading has been interposed for any improper purpose, *or where*, after reasonable inquiry, a competent attorney could not form a reasonable belief that the pleading is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification or reversal of existing law." *Eastway Constr. Corp. v. City of New York*, 762 F.2d 243, 254 (2d Cir. 1985) (emphasis in original). We pointed out that our Rule 11 standard is not intended to cast a pall on attorney originality and creativity. Rather, it is targeted at situations "where it is patently clear that a claim has absolutely no chance of success under the existing precedents, and where no reasonable argument can be advanced to extend, modify or reverse the law as it stands...." *Id.* We stressed that "any and all doubts must be resolved in favor of the signer." *Id.*

Here, plaintiff was specifically given leave to replead. While it is true that he was given leave to do so "if" he could allege sufficient facts to support his allegations, his failure to plead his cause in compliance with Rule 9(b), which, as this case demonstrates, requires more of the pleader than is generally mandated by the federal rules,[6] should not precipitate an award of

---

5. The additions are summarized *supra* at section I(C) of this opinion.

6. *Cf.* Fed.R.Civ.P. 8(a)(2), calling for "a short and plain statement of the claim showing that the pleader is entitled to relief...."

sanctions absent patently inadequate claims or unreasonable contentions. *Eastway*, 762 F.2d at 254. Such circumstances are not present here.

It is evident that plaintiff attempted to assert additional facts, including the existence of published reports of prior occasions on which Leucadia National had allegedly engaged in greenmail, in order to support the allegation that Leucadia's intentions were contrary to its representations made in public filings. Several new paragraphs were added, as discussed in part I(C) above. Despite our agreement with the district court that the new material was insufficient to satisfy Rule 9(b), we are unable to conclude that it was patently clear that there was absolutely no chance that the new material could cure the defect.

We have carefully reviewed the cases cited to us by appellees on this issue. Some involved warnings that sanctions might be imposed in the future if the adjudicated claims were reasserted. *E.g., Zerman v. Melton*, 735 F.2d 751 (2d Cir.1984) (per curiam), *cert. denied*, 474 U.S. 845, 106 S.Ct. 135, 88 L.Ed.2d 111 (1985); *Black v. Niagara Mohawk Power Corp.*, 641 F.Supp. 799 (N.D.N.Y.1986). *Cf. Equitable Life Assurance Soc'y v. Alexander Grant & Co.*, 627 F.Supp. 1023, 1033 (S.D.N.Y. 1985) (complaint dismissed without award of Rule 11 sanctions, plaintiff warned to "carefully consider its duty under Rule 11" if it chooses to file amended complaint). Others involved histories of repetitive and vexacious litigation far more aggravated than any presented here. *E.g., Rand v. Anaconda–Ericsson, Inc.*, 794 F.2d 843 (2d Cir.) (injunction against further litigation), *cert. denied*, —— U.S. ——, 107 S.Ct. 579, 93 L.Ed.2d 582 (1986); *United States v. Carley*, 783 F.2d 341 (2d Cir.), *cert. denied*, 476 U.S. 1142, 106 S.Ct. 2251, 90 L.Ed.2d 697 (1986); *Johnson v. New York City Transit Auth.*, 639 F.Supp. 887 (E.D.N.Y. 1986), *aff'd in part and vacated in part*, 823 F.2d 31 (2d Cir.1987); *Cavallary v. Lakewood Sky Diving Center*, 623 F.Supp. 242 (S.D.N.Y.1985); *Andre v. Merrill Lynch Ready Assets Trust*, 97 F.R.D. 699 (S.D.N.Y.1983). *Wm. Passalacqua Builders, Inc. v. Resnick Developers South, Inc.*, 611 F.Supp. 281 (S.D.N.Y.1985), imposed sanctions for the filing of a motion to dismiss which was completely duplicative of a simultaneously filed motion to reargue. In *Angrisani v. City of New York*, 639 F.Supp. 1326 (E.D.N.Y.1986), plaintiff was required to pay a $300 sanction as a condition of filing a *third* amended complaint.

We find none of these authorities persuasive that sanctions are appropriate on this record. Plaintiff and his counsel did not reach the point of clear abuse at which sanctions are appropriate, especially since "any and all doubts must be resolved in [their] favor." *Eastway Constr. Corp. v. City of New York*, 762 F.2d 243, 254 (2d Cir.1985).

## III.  CONCLUSION

The order of the district court is affirmed as to the dismissal of the amended complaint, and reversed as to the imposition of sanctions. The parties shall bear their own costs.