Ruth **KAMERMAN, Executrix of the Estate of Norman Kamerman, Plaintiff,**

v.

Saul **STEINBERG, Reliance Group Holdings, Inc., Reliance Group, Inc., Reliance Financial Services Corp., and Reliance Insurance Company, Defendants.**

**No. 84 Civ. 4440 (CBM).**

United States District Court,
S.D. New York.

Aug. 24, 1990.

## MEMORANDUM OPINION

MOTLEY, District Judge.

On May 25, 1990, the parties to the class actions related to the above-captioned case, the "Brown" actions, presented to the court a proposed implementation order for a settlement agreement for those actions. This settlement agreement included an "opt-out" provision permitting class members to choose to participate in the Kamerman action, in which there was no settlement, in lieu of accepting the terms of the Brown settlement. Immediately following the court's oral approval of the implementation order for this agreement with its "opt-out" provision, counsel for the Kamerman class announced his willingness, under protest, to forego representation of any class member also included within the Brown class—that is, all class members who purchased Disney stock after May 24, 1984—in order to proceed to trial more quickly. The court subsequently approved an implementation order for a settlement agreement in the Brown class with no opt-out provision and rescheduled trial for the remaining Kamerman class, purchasers of Disney stock between March 29 and May 24, 1984 inclusive.

Defendants then moved for summary judgment requesting dismissal of the Complaint in the Kamerman class action. For the following reasons, the court grants defendants' motion.

*Background*

This action concerns the alleged defrauding of purchasers of Disney stock during the class period through what plaintiff claims were a series of misleading 13D statements. Specifically, plaintiff contends that defendants' "basic and primary purpose" in purchasing Disney stock throughout the class period was to sell that stock to Disney at a premium above the market price but that defendants misrepresented their intentions during that time, stating that they were only "passive" investors. In short, plaintiff claims that defendants intended, from at least the beginning of the class period on, to "greenmail" Disney and that they misrepresented this intention in their Schedule 13D filings.

On March 28, 1984, following the purchase of a large number of shares of Disney common stock, defendants made a Schedule 13D filing which stated that their purchase of Disney stock was "for investment," adding that

[s]ubject to availability and price and subject to applicable laws and regulations, the Purchasers may increase their holdings but also reserve the right to dispose of all or a portion of such Securities on terms and at prices determined by them.

The 13D statement then indicated that purchasers had no present intention of participating in the running of the business of the issuer, but that they reserved the right at any time to cease being passive investors. This statement of purpose did not change in the subsequent filings throughout the class period. As indicated above, plaintiff claims that these statements of purpose were fraudulent and that by not accurately stating the intention to "greenmail" Disney, defendants caused the price of Disney stock to be inflated. Defendants now move for summary judgment arguing that there is no rational basis for the claim that defendants' intentions were primarily, from the beginning, to "greenmail" Disney and that, as a matter of law, the statement of purpose described above was sufficient to encompass an intention by defendants to consider sale of their Disney stock to the issuer should such a repurchase agreement become financially desirable. The court agrees.

*Analysis*

1. Standard for Summary Judgment

Summary judgment should be granted "where the evidence is such that it 'would require a directed verdict for the moving party.'" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986), citing *Sartor v. Arkansas Gas Corp.*, 321 U.S. 620, 624, 64 S.Ct. 724, 727, 88 L.Ed. 967 (1944). As the Supreme Court explained in *Anderson*, the issue in a summary judgment motion is

whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented. The mere existence of a scin-

tilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Anderson*, 477 U.S. at 252, 106 S.Ct. at 2512. The Court has also clarified that "if the factual context renders [plaintiffs'] claim implausible—*if the claim is one that simply makes no economic sense*—[plaintiffs] must come forward with more persuasive evidence to support their claim than would otherwise be necessary." *Matsushita Elec. Ind. Co. v. Zenith Radio*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (emphasis added). In order to survive the instant motion, therefore, plaintiff Kamerman must proffer enough evidence to allow a reasonable jury to decide by a preponderance of the evidence that defendants intended from March 29, 1984 on to "greenmail" Disney. Plaintiff has failed to do so.

2. Examination of Plaintiff's Evidence

■ Initially, it should be noted that 13D filings "which disclose the possibilities the reporting person is considering, but which do not indicate a commitment to any particular course of action have been upheld as proper disclosures against allegations of allegedly undisclosed 'greenmail' intentions." *Lou v. Belzberg*, 728 F.Supp. 1010, 1020 (S.D.N.Y.1990) (Sweet, J.). *See also Chock Full O'Nuts Corp v. Finkelstein*, 548 F.Supp. 212, 218 (S.D.N.Y.1982) (Brieant, J.). Thus, in general, a 13D filing sufficiently discloses the possibility of a sale of the filer's stock when it states, as in the instant case, that the filer is a passive investor but that it reserves the right to sell all or some of its holdings. Plaintiff is correct in arguing that a false statement of present intention is not made legal by a reservation of the right to change one's intentions. *Seagoing Uniform Corp. v. Texaco, Inc.*, 705 F.Supp. 918, 929 (S.D.N.Y.1989) (Motley J.). In other words, if defendant, in fact, exclusively intended from the beginning of the class period to "greenmail" Disney, its reservation of the option to sell in its Schedule 13D would not protect it from liability. However, if a

Schedule 13D filer intends to do whatever proves most financially beneficial as events unfold, the decisional law of this court has consistently indicated that a claim of fraud based on allegedly undisclosed "greenmail" intentions will not stand where the Schedule 13D discloses that the filer reserves its option to sell its stock should circumstances make it desirable to do so.

In *Lou*, the defendant had filed a 13D statement indicating that it intended to propose an acquisition of the issuer but that it was also considering a number of available options. After the issuer took defensive measures, it approached the filer and proposed a repurchase. In the end, the filer agreed to a repurchase. Judge Sweet found the possibility that the filer might sell its shares at a profit to the issuer or another party "was an 'obvious conclusion,' an 'implicit assumption,' and a 'self-evident' fact that need not have been stated." *Lou*, 728 F.Supp. at 1020, citing *Management Assistance Inc. v. Edelman*, 584 F.Supp. 1021, 1027 (S.D.N.Y.1984). *See also Pantry Pride, Inc. v. Rooney*, 598 F.Supp. 891, 901 (S.D.N.Y.1984) (disclosure of possibilities of future scenarios sufficient). In *Finkelstein*, the court dismissed a company's suit against an insurgent group of stock purchasers for allegedly trying to extort an inflated price for its shares where the 13D filing disclosed an intention to pursue one or more alternative actions including sale of the group's shares. Judge Brieant held that the intention to sell if it should appear beneficial to do so was adequately disclosed, stating that it was obvious that the group had the "economic motive to obtain the highest possible economic benefit for themselves from their investment." *Finkelstein*, 548 F.Supp. at 218. *See also Stern v. Leucadia National Corp.*, 844 F.2d 997, 1004 (2d Cir.), *cert. denied*, 488 U.S. 852, 109 S.Ct. 137, 102 L.Ed.2d 109 (1988) (affirming dismissal under Rule 9(b) where, *inter alia*, early filings indicated that filer might dispose of its stock instead of pursuing control of issuer). In both of these cases, the intention to pursue a repurchase if it became financially desirable was found to be sufficiently disclosed by a statement of purpose which reserved the right to dispose of the stock in question.

This court's decision in *Seagoing* is not in conflict with these opinions. In *Seagoing*, the court denied a motion to dismiss an amended complaint where the defendants' 13D filing indicated that their purchase was solely for investment purposes and did not disclose meetings between the filer and the issuer discussing a repurchase of the filer's holdings by the issuer. The court explained that a "greenmailer" cannot insulate itself from liability under the securities laws with a 13D filing stating that the stock purchase was solely for investment purposes and that it might accordingly either buy more or sell some or all of its stock if that is not in fact the filer's intention at the time of the filing. As the court stated, the "crux, therefore, is not merely doing what one's 13(d) statement said one would do. Rather, it is what one's intent was at the time one made the 13(d) filing." *Seagoing*, 705 F.Supp. at 929. The *Seagoing* decision, therefore, does not challenge the proposition that one cannot use hindsight to infer that the end result of a series of transactions was exclusively intended from the beginning where a rational investor would leave its options open and has stated as much in its 13D filing. The rule articulated in *Seagoing* simply does not permit a filer which has already chosen, and even pursued, a repurchase to misrepresent its intentions by claiming to be a passive investor which might either continue to buy or decide to sell.

 In the instant case, the question is whether plaintiff has put forward enough evidence to support its claims concerning defendants' intentions at the times of the filings during the class period. Plaintiff seeks to distinguish *Lou* and *Finkelstein*, arguing that in those cases, the court did not find any false statements in the 13D filings, whereas in the case at bar, defendants misstated their intentions. However, this argument simply restates plaintiff's factual premise that in the instant case, defendants' "basic and primary" intention from the beginning was to "greenmail" Disney. In order to survive summary

judgment, plaintiff's claim of a primary intent to "greenmail" would have to be supported by evidence that defendants did not merely consider a sale of stock to the issuer to be an option but the basic goal of their purchases. Such support is lacking in the instant case.

Plaintiff's evidence of defendants' alleged intention to "greenmail" Disney falls into three categories: defendant Steinberg's prior conduct with respect to other companies; defendants' conduct immediately following the class period, including the alleged Hodes–Flom conversations and the actual repurchase itself; and defendants' conduct during the class period. None of this evidence is sufficient to create an inference that defendants' basic and primary intention during the class period was to "greenmail" Disney. *See Leucadia*, 844 F.2d at 1004 (not enough to cite reports of other instances of greenmail or to "assert conclusory suspicions as to defendants' motives").

First, evidence concerning defendants' conduct with respect to other companies is inconclusive at best. Although defendant Steinberg may have "greenmailed" several other corporations, it has not been disputed that he has also engaged in takeovers and other kinds of investment activities. This record is far more supportive of an inference that Steinberg pursues whatever avenue seems most profitable and that he keeps his options open until then than it is of the inference that he consistently sets out with the sole intention of "greenmailing" companies.

Second, defendants' conduct following May 24, 1984 is also inconclusive. The final repurchase agreement and any negotiations that led to it are again only evidence that defendants kept this option available, as the Schedule 13D's indicated. Especially given Steinberg's preparations for a tender offer and the defensive maneuvers engaged in by the Disney board prior to the repurchase agreement, it is unreasonable to use hindsight to read an intent to reach the end result into Steinberg's early actions. The right of profit participation provisions for investors in case of a repur-

chase and the withdrawal provisions for defendants in case of a self tender by Disney do not make plaintiff's use of hindsight any stronger. These provisions are indicative of an intention to keep options open in case the tender offer failed. It would be highly speculative and inconsistent with the approach of a rational and sophisticated trader in securities to infer from the events in late May and early June, 1984 that defendants set out from the beginning with the primary intention of reaching the result that was reached weeks after the end of the class period.

Finally, plaintiff's arguments concerning defendants' conduct during the class period are not strong enough to support his claim. Plaintiff claims that defendant Steinberg has never been able to offer an explanation of why it would have been rational or desirable to invest so much money in Disney stock. This claim ignores the effect that a large passive investment by someone capable of seeking control of a corporation can have on the conduct of the directors of that corporation. Steinberg could very well have intended to wait and see whether his purchase would have the effect of influencing the directors to take some of the action they had considered but neglected to take at that time. In any event, plaintiff's negative inference is once again highly speculative, particularly standing alone, and plaintiff's other evidence concerning defendant's conduct during the class period is inconclusive. There are many reasons why Steinberg might not have wished to speak to the chair of Disney, most of them consistent with the inference that he was keeping his options open. That he structured his May 1, 1984 purchase to avoid exposure under Section 16(b) of the Securities Exchange Act of 1934 should he sell his holdings is also consistent with that inference.

To the extent that plaintiff's evidence, such as the May 1, 1984 purchase of one million shares of Disney stock, supports the inference that defendants never intended merely to be passive investors, it tends to indicate an intention to attempt to take over Disney as much as it indicates an intention to force a repurchase by Disney. Steinberg's subsequent tender offer and

his arranging of financing for that tender offer support this view. However, plaintiff cannot argue simply that Steinberg never intended to be a passive investor, because failure to disclose an intention to take control of Disney would have deflated stock prices thus negating any claim of damages by class members.

In sum, plaintiff has failed to provide any evidence that clearly supports the inference that defendants intended from March 29, 1984 to greenmail Disney. If anything, such an inference would be inconsistent with a rational profit-maximizing approach to investment. Defendants' conduct, as described by plaintiff, is far more consistent with the intention indicated by the Schedule 13D's in question, that is, to invest passively at first, but to keep open other options, such as seeking either a takeover or a repurchase. As indicated above, as a matter of law, such a statement of purpose sufficiently discloses the filer's intentions under these circumstances. Plaintiff's proffer of proof is therefore not sufficient to permit a reasonable jury to find his claims by a preponderance of the evidence.

For the foregoing reasons, defendants' motion for summary judgment dismissing the Complaint with respect to the Kamerman class as currently defined is granted.