**BROWNING AVENUE REALTY CORP.,** individually and on behalf of Cross County Square Associates, a joint venture, Plaintiffs,

v.

Bernard J. **ROSENSHEIN** and Rosenshein Associates, Ira Rubin, Krasnow, Cohen, Gaft & Rubin, Alfred Wilner and Alfred Wilner, Inc., Defendants.

No. 90 Civ. 8158 (RWS).

United States District Court, S.D. New York.

Aug. 7, 1991.

**134**

Kalnick, Jackson, Klee & Green, P.C. (Stuart A. Jackson, of counsel), New York City, for plaintiffs.

Wilson, Elser, Moskowitz, Edelman & Dicker (Thomas R. Manisero, Dennis Justin Kelly, of counsel), New York City, for defendants Ira Rubin and Krasnow, Cohen, Gaft & Rubin.

L'Abbate & Balkan (Anthony P. Colavita, Marie Ann Hoenings, Judith M. Rosen, of counsel), Garden City, N.Y., for defendants Alfred Wilner and Alfred Wilner, Inc.

## OPINION

SWEET, District Judge.

Defendants Ira Rubin and his accounting firm, Krasnow, Cohen, Gaft & Rubin (collectively "Rubin") and defendants Alfred Wilner and Alfred Wilner, Inc. (collectively "Wilner") have moved under Rules 9(b) and 12(b)(6), Fed.R.Civ.P., to dismiss the complaint of plaintiffs Browning Avenue Realty Corp. ("Browning") on behalf of the joint venture Cross County Square Associates (the "joint venture") of which Browning is general partner. Because materials outside the pleadings have been considered, pursuant to Rule 9(b), the motions will also be treated as summary judgment motions under Rule 56, Fed. R.Civ.P. *Lenczycki v. Shearson, Lehman, Hutton, Inc.*, 1990 WL 151137 (S.D.N.Y.1990). Upon the findings and conclusions set forth below, the motions to dismiss the complaint are granted.

### Prior Proceedings

This action was commenced on February 8, 1988 in the Supreme Court of the State of New York, County of New York, Index No. 9369/88, against Bernard J. Rosenshein and Rosenshein Associates (collectively "Rosenshein"). Wilner and Rubin were not named as defendants in the original action.

On October 10, 1990, Browning sought leave to amend its complaint for a second time to add a claim for violations of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961, *et seq.* ("RICO") and on November 13, 1990, Browning's application was granted by an order entered in the Supreme Court of the State of New York, which stated:

The newly asserted [RICO] claim properly states a claim for relief, as the pleaded facts are almost identical to the RICO claim upheld in *Proctor [Procter] & Gamble Co. v. Big Apple Industrial Buildings, Inc.*, 879 F.2d 10 (2d Cir. 1989).

The Second Amended Complaint, the first pleading in which Wilner and Rubin are named as defendants, was served on Rubin and Wilner on December 6, 1990 and on that date Rosenshein filed a voluntary petition under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court in the Southern District of New York.

On December 19, 1990, Wilner removed the action to this court, alleging federal jurisdiction arising out of the RICO claim. Discovery has been had, including depositions of all the principals except Wilner, interrogatories have been answered, and documents produced.

### The Facts

Browning, a wholly owned subsidiary of Alexander's Inc., and Rosenshein entered into a Joint Venture Agreement (the "Agreement") dated May 8, 1984. Pursuant to the Agreement, they formed an entity entitled Cross County Square Associates ("Associates") to construct a strip shopping center in Yonkers, New York (the "Project") on land owned at the time by Browning. Pursuant to the Agreement, Browning received $2.9 million for the property, which contained a substantial amount of rock in its subsurface.

Rosenshein was considered the "rock king" as a result of his professed ability to develop properties despite topographical

problems, which appeared to be present on the site for the Project.

Rosenshein was the managing venturer and the construction manager with responsibility to provide a final construction budget to Browning for approvals. As "managing venturer" Rosenshein was required to notify each venturer promptly of any deficiency, to keep the joint venture's books and records, to prepare and deliver (at least quarterly) reports on the status of the joint venture, including balance sheets and comparisons to the operating budget, to provide a summary of all itemized disbursements from each construction loan advance, and to oversee construction.

According to the Second Amended Complaint, Rosenshein was involved in three additional projects at the time of this Project and used these projects to divert funds from Associates.

In May 1984 Rosenshein and Associates entered into a separate construction contract. On July 23, 1985 Browning and Rosenshein modified the Agreement increasing the strip shopping center from 100,000 square feet to 212,000 square feet and increasing the projected construction costs from $8 million to $25 million.

Rubin and Rosenshein have a long personal and professional relationship and Rubin has functioned as an accountant for Rosenshein and his business. Employees of the Rubin firm made on-site visits to review Rosenshein's books at least six times a year or more. The Rubin employees (i) prepared summaries from the journals created by Rosenshein's bookkeeping staff from the check books, (ii) reconciled the bank accounts; and (iii) prepared Associate's tax returns, and Rubin sent financial reports directly to Browning. During the course of construction, and immediately thereafter, at least six financial summaries, in addition to the annual tax returns, were prepared by Rubin and were mailed to Browning and to Associates.

The Agreement, of which Rubin was aware, imposed the duty upon Rosenshein of:

preparing and delivering to each of the Venturers, not less frequently than quarter-annually, periodic reports of the state of the business and affairs of the Venture, including balance sheets, statements of earnings including comparisons to the operating budget, which reports shall be submitted not less than forty-five (45) days after the end of the period covered therein.

The Agreement further provided:

*Books; Statements.* The Venture shall keep accurate, full and complete books and accounts showing exclusively its assets and liabilities, operations, transactions, and financial condition. All financial statements (including, but not limited to balance sheets, earnings statements, statements of "change in financial position" and statements of "change in owner's equity" shall be generally accepted according principles. The Venturers shall determine the methods to be used in the preparation of financial statements and federal, state, county and municipal income and other tax returns for the Venture including, but not limited to, valuation of assets, the method of depreciation, elections, credits and accounting procedures. However, the actual preparation of the foregoing shall be undertaken by Developer.

*Accounting.* As soon as practicable after the end of each fiscal year of the Venture, an audit shall be made of the books and records of the Venture for which fiscal year, in accordance with generally accepted auditing standards, by an independent certified public accounting firm of recognized standing, selected by Developer and retained by the Venture, covering the financial statements described in paragraph 10.1. The certified financial statement shall be furnished to each Venturer no later than sixty (60) days after the end of each fiscal year. The Venturers agree that different accounting procedures may be used for book and tax purposes.

Rubin prepared summaries of costs, one such summary of costs reflecting only costs paid during the period of construction at a time when the construction was completed.

A mortgage loan with European American Bank ("EAB") in the amount of $25 million for the construction of the Project was obtained. In the fall of 1985, EAB contacted Wilner and retained him as the inspecting engineer on behalf of EAB for the Project. Prior to this time, Wilner had a business relationship with EAB that spanned approximately fifteen years.

Wilner's responsibilities were to prepare monthly inspection reports for EAB, which summarized the status of the work and commented on the monthly requisitions. EAB required that Wilner send the monthly reports solely to the bank. These reports were not disclosed to the joint venture or either of the co-venturers.

Wilner reviewed the available preliminary plans, visited the site on December 4, 1985, and submitted an initial report to EAB evaluating the proposed Project and reviewing the preliminary plans. Thereafter Rosenshein made the monthly requisitions for loan disbursements in writing to EAB. Thereafter, Wilner visited the premises to review the Project's hard cost requests such as funds for escalators, paving, concrete, roofing and plumbing costs (collectively "line items"), and to determine the percentage of the construction that had actually been completed for each line item. Wilner's responsibility with regard to these requisitions was to ascertain the percentage of construction that had been completed at the time that the requisitions were made.

On January 28, 1987, Rosenshein submitted a revised requisition based upon an approved increase in the mortgage loan from $25 million to $28.4 million. Wilner's subsequent report on February 5, 1987 noted this change and stated that it was largely due to an increase in the hard costs for the Project. The report also noted that Wilner was first informed of a loan amount change by EAB when he reviewed Rosenshein's revised requisition.

On February 26, 1987, Rosenshein submitted a requisition that noted that the loan had been increased from $28.4 million to $30 million. Wilner noted in this report that the increase reflected new line items and cost increases.

On August 28, 1987, Wilner submitted the final site inspection report to EAB. The report indicated that the construction was complete. Wilner made no further site inspections in connection with this Project, and the August 28, 1987 report was Wilner's final contact with this Project. All loan negotiations were conducted solely between Associates and EAB.

On November 30, 1987 Rosenshein informed Browning that the total cost of construction was $38,764,200.00. As the permanent financing obtained was only $34,000,000.00, Rosenshein made a "capital call" upon Browning, requesting the payment of one-half of the cost overrun beyond the permanent financing. Browning refused to honor the capital call. Because of this failure to supply additional capital, Rosenshein has denied Browning its one-half participation in the Project, the cause for the underlying action between Browning, Associates and Rosenshein.

## I. The Complaint Fails To State A RICO Claim Against Rubin

The Second Amended Complaint asserts that Rubin either performed or aided and abetted violations of RICO, specifically 18 U.S.C. § 1962(b) through (d).

The Second Circuit Court of Appeals has outlined the various components of any § 1962 RICO violation:

> (1) that the defendant (2) through the commission of two or more acts (3) constituting a "Pattern" (4) of "racketeering activity" (5) directly or indirectly invests in, or maintains an interest in, or participates in (6) an "enterprise" (7) the activities of which affect interstate or foreign commerce.

*Moss v. Morgan Stanley, Inc.*, 719 F.2d 5, 17 (2d Cir.1983), *cert. denied sub. nom.*, *Moss v. Newman*, 465 U.S. 1025, 104 S.Ct. 1280, 79 L.Ed.2d 684 (1984) (*"Moss"*).

### A. *The Predicate Acts Requirement*

The Second Amended Complaint alleges one act by Rubin: the preparation of a summary of construction costs through Au-

gust 31, 1984 made known to Browning and to Associates. However, in their opposition papers, Browning and Associates refer to a series of communications between Rubin and Rosenshein relating to the projects, documents which were also sent to the plaintiffs.

The Second Amended Complaint alleges that all of the defendants, including Rubin, performed or aided and abetted the performance of violations of the mail fraud and wire fraud statutes (18 U.S.C. §§ 1341, 1343), and also performed violations of the New York Penal Law (§ 155.42—Grand Larceny in the first degree; and § 175.10—falsifying business records in the first degree).[1]

### 1. New York Penal Law Violations Not "Racketeering Activity"

██ However, the violations of the New York Penal Law alleged by Browning do not satisfy the definition of a "racketeering activity" as defined in § 1961 of the RICO statute. Thus, as to those purported violations, Browning has not set forth a predicate act, a required element of a RICO claim. *See* 18 U.S.C. § 1962(a)–(d).

### 2. Mail And Wire Fraud As Alleged Do Not Constitute Racketeering Activity

██ To plead mail and wire fraud violations, Browning must allege "(1) participation in a scheme to defraud and (2) knowing use of the interstate mails or interstate wires to further the scheme." *Connors v. Lexington Ins. Co.,* 666 F.Supp. 434, 450 (E.D.N.Y.1987) (citing *United States v. Gelb,* 700 F.2d 875, 879 (2d Cir.1983), *cert. denied,* 464 U.S. 853, 104 S.Ct. 167, 78 L.Ed.2d 152 (1983)); *see also U.S. v. Pearlstein,* 576 F.2d 531, 534 (3d Cir.1978) (the essential elements are (1) the existence of a scheme to defraud, (2) the use of the mails in furtherance of the fraudulent scheme, and (3) culpable participation by the defendant) and that Rubin, for the purpose of executing a scheme to defraud, "either placed, took, received, or knowingly caused to be delivered by mail any matter or thing whatever." *Sellers v.*

*General Motors Corp.,* 590 F.Supp. 502, 505 (E.D.Pa.1984).

Similarly, to establish wire fraud, Browning must allege that Rubin, "transmitted or caused to be transmitted by means of wire or writing or sound for the purpose of executing a scheme or artifice to defraud." *Id.* In other words, the Second Amended Complaint must show a scheme to defraud coupled with facts demonstrating that Rubin used the mail or wires to further the "scheme." *See In re Gas Reclamation, Inc. Securities Litigation, ("GRI"),* 659 F.Supp. 493, 512 (S.D.N.Y.1987); *see also River Plate Reinsurance Co., Ltd. v. Jay-Mar Group, Ltd.,* 588 F.Supp. 23, 27 (S.D.N.Y.1984).

The Second Amended Complaint states that "[t]he September KCGR [Rubin] costs summary revealed to Browning for the first time the shocking truth ..." Second Amended Complaint ¶ 87. Thus, Browning has failed to allege any factual assertions evincing "misrepresentations" in the Rubin report to Rosenshein.

### 3. Rule 9(b) Applies To Allegations Of Mail And Wire Fraud For Purposes Of Racketeering Activity

██ As discussed above, proper pleading of mail and wire fraud predicate acts requires an allegation of an underlying fraudulent scheme. *See GRI,* 659 F.Supp. at 512. Moreover, where, as here, the predicate acts of a RICO claim sound in fraud, the pleading of those predicate acts must satisfy the requirements of Fed. R.Civ.P. 9(b). *See Morin v. Trupin,* 711 F.Supp. 97, 111 (S.D.N.Y.1989) *("Morin"); see also the Limited, Inc. v. McCrory Corp.,* 645 F.Supp. 1038, 1041 (S.D.N.Y.1986); *Equitable Life Assurance Society v. Alexander Grant & Co.,* 627 F.Supp. 1023, 1028 (S.D.N.Y.1985) *("Equitable Life").* The time, place, speaker and content of the alleged fraudulent misrepresentations must be specified in the Second Amended Complaint. *See Luce v. Edelstein,* 802 F.2d 49, 54 (2d Cir.1986); *see also Morin,* 711 F.Supp. at 111; *Equitable Life,* 627 F.Supp. at 1029; *Velis v. D.H. Blair & Co., Inc.,* No. 88 Civ. 8866,

---

**1.** As pled in the second amended complaint.

1989 WL 135379 (S.D.N.Y. Oct. 30, 1989). Browning must also allege the manner in which the alleged misrepresentations were fraudulent, *see, e.g., Todd v. Oppenheimer & Co.*, 78 F.R.D. 415, 420 (S.D.N.Y.1978), as well as fraudulent intent. *See Beck v. Manufacturers Hanover Trust Co.*, 820 F.2d 46, 49–51 (2d Cir.1987), *cert. denied*, 484 U.S. 1005, 108 S.Ct. 698, 98 L.Ed.2d 650 (1988); *see also Anitora Travel, Inc. v. Lapian*, 677 F.Supp. 209, 214 (S.D.N.Y.1988). Lastly, the Second Amended Complaint must delineate the specifics of Rubin's purported use of the mails and wires. *Frota v. Prudential–Bache Securities, Inc.*, 639 F.Supp. 1186, 1192 (S.D.N.Y.1986).

The Second Amended Complaint fails to provide the time, place, speaker and content of the alleged fraudulent misrepresentations; indeed, the September 1987 summary is stated to be accurate.

■ Conclusory allegations that Rubin's conduct was fraudulent and deceptive are insufficient to satisfy the particularity requirement of Fed.R.Civ.P. 9(b). *See Eickhorst v. American Completion and Development Corp.*, 706 F.Supp. 1087, 1091 (S.D.N.Y.1989); *see also Segal v. Gordon*, 467 F.2d 602, 608 (2d Cir.1972) (*"Segal"*).

■ While Fed.R.Civ.P. 9(b) allows Browning to plead intent generally as long as the Second Amended Complaint alleges facts sufficient to support an inference of fraudulent intent, *see, e.g., Stern v. Leucadia National Corp.*, 844 F.2d 997, 1003 (2d Cir.), *cert. denied*, 488 U.S. 852, 109 S.Ct. 137, 102 L.Ed.2d 109 (1988); *Segal*, 467 F.2d at 608, "[t]he 'mere assertion that wrongful statements were made, without more, is wholly insufficient to support a claim of fraud.'" *Zuckerman v. Harnischfeger Corp.*, 591 F.Supp. 112, 117 (S.D.N.Y.1984) [quoting *Juster v. Rothschild, Unterberg, Towbin*, 554 F.Supp. 331, 334 (S.D.N.Y.1983)]. In addition, where, as here, more than one defendant is charged with fraud, the Second Amended Complaint must particularize each defendant's alleged participation in the fraud. *See DiVittorio v. Equidyne Extractive Indus.*, 822 F.2d 1242, 1247 (2d Cir.1987) ("Where multiple defendants are asked to respond to allegations of fraud, the complaint should inform each defendant of the nature of his alleged participation in the fraud."); *see also Bingham v. Zolt*, 683 F.Supp. 965, 973 (S.D.N.Y.1988); *Leslie v. Minson*, 679 F.Supp. 280, 284 (S.D.N.Y.1988); *Equitable Life*, 627 F.Supp. at 1028; *Natowitz v. Mehlman*, 542 F.Supp. 674, 676 (S.D.N.Y.1982).

■ The Second Amended Complaint states simply that Rubin made "documentary and oral misrepresentations regarding actual construction costs" without facts to support an inference of fraudulent intent on the part of Rubin as distinguished from that of the other defendants.

■ Browning's assertion that it is not required to plead facts demonstrating mail and wire fraud with particularity is based upon the limited exception which permits fraud to be alleged upon information and belief as to facts peculiarly within the opposing parties' knowledge. *See DiVittorio*, 822 F.2d at 1247; *Stern*, 844 F.2d at 1003.

Here, Browning has conducted the depositions of Rubin and Rosenshein, and already has obtained the pertinent documents and received answers to interrogatories. The necessary facts are not unknown to Browning. Further, in order to make use of that limited exception, Browning's allegations must be accompanied by a statement of the facts upon which the belief is based. *DiVittorio*, 822 F.2d at 1247; *Stern*, 844 F.2d at 1003.

Browning provides a partial quote from *Connecticut National Bank v. Fluor Corp.*, 808 F.2d 957, 960 (2d Cir.1987) (*"Connecticut National Bank"*), asserting that it demonstrates that it need not plead scienter with specificity. Actually, in *Connecticut National Bank* the court found that a plaintiff's inability to plead a defendant's actual state of mind:

... does not mean, however, that plaintiffs are relieved of their burden of pleading circumstances that provide at least a minimal factual basis for their conclusory allegations of scienter. "It is

reasonable to require that the plaintiffs specifically plead those events" which "give rise to a strong inference" that the defendants had an intent to defraud, knowledge of the falsity of reckless disregard for the truth. *Connecticut National Bank,* 808 F.2d at 962 [quoting *Ross v. A.H. Robins Co.,* 607 F.2d 545, 558 (2d Cir.1979), *cert. denied,* 446 U.S. 946, 100 S.Ct. 2175, 64 L.Ed.2d 802 (1980)].

The facts alleged in the Second Amended Complaint do not lead to a "strong inference" that Rubin had an intent to defraud or knowledge of any falsity. Indeed, the vast majority of the Second Amended Complaint alleges purportedly fraudulent representations (both oral and written) by Rosenshein, never once alleging that Rubin had knowledge that representations were made; knowledge of the contents of such representations; or knowledge of the falsity of such representations. Moreover, Browning has not pleaded facts demonstrating that Rubin recklessly disregarded the truth.

### 4. The Aiding And Abetting Claim

 Browning alleges in the alternative that Rubin aided and abetted the wire and mail fraud RICO violations. In order to state properly that claim, however, Browning must allege that Rubin consciously assisted the commission of the mail or wire fraud in some active way. *See e.g., Laterza v. American Broadcasting Co.,* 581 F.Supp. 408, 412 (S.D.N.Y.1984). In addition, to allege properly its claim for aiding and abetting, Browning must show: (1) the existence of a ... violation by the primary (as opposed to the aiding and abetting) party; (2) "knowledge" of this violation on the part of the aider and abettor, and (3) "substantial assistance" by the aider and abettor in the achievement of the primary violation. *Samuel M. Feinberg Testamentary Trust v. Carter,* 652 F.Supp. 1066, 1082 (S.D.N.Y.1987). Further, Browning must also properly allege that its injury was "a direct or reasonably foreseeable result" of the conduct complained of. *See Bloor v. Carro, Spanbock, Londin, Rodman &*

*Fass,* 754 F.2d 57, 63 (2d Cir.1985); *see generally Morin,* 711 F.Supp. at 112.

Moreover, in order to satisfy the elements of its aiding and abetting claim, Browning must meet the requirements of Fed.R.Civ.P. 9(b). *See Morin,* 711 F.Supp. at 112 ("[t]o the extent that the underlying primary violations are based on fraud, allegations of aider-abettor liability must meet the requirements of Fed.R.Civ.P. 9(b)."); *see also Dickens v. Chemical Bank,* 573 F.Supp. 1129 (S.D.N.Y.1983).

 Browning's aiding and abetting claim against Rubin consists of conclusory assertions of aider and abettor liability referring to the general charges of wrongdoing, *see Decker v. Massey–Ferguson, Ltd.,* 681 F.2d 111, 119 (2d Cir.1982), and as such does not satisfy Fed.R.Civ.P. 9(b).

### B. *Other RICO Elements Have Not Been Pled*

 Browning attempts to satisfy the RICO "enterprise" requirement by asserting that Rosenshein and his company were "a group of individuals associated in fact" and thus an enterprise under 18 U.S.C. § 1961(4), but has not adequately alleged facts showing a nexus between, and the continuity of, the purported frauds—in other words, no RICO "pattern."

Section 1961(5) provides:

[a] pattern of racketeering activity requires at least two acts of racketeering activity, one of which occurred after the effective date of this chapter and the last of which occurred within ten years (excluding any period of imprisonment) after the commission of a prior act of racketeering activity.

18 U.S.C. § 1961(5).

The United States Supreme Court has interpreted § 1961(5) to require, in addition to a showing of "at least two acts of racketeering activity," allegations supporting continuity plus relationship. *Sedima, S.P.R.L. v. Imrex Co.,* 473 U.S. 479, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985) ("*Sedima*"). In this regard, the Court in *H.J. Inc. v. Northwestern Bell Telephone Co.,* ("*Northwestern Bell*"), 492 U.S. 229, 109

S.Ct. 2893, 106 L.Ed.2d 195 (1989) has held that continuity:

> is both a closed and open-ended concept, referring either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition.

*Id.* 109 S.Ct. at 2902. The Court further explained that:

> [a] party alleging a RICO violation may demonstrate continuity over a closed period by proving a series of related predicates extending over a substantial period of time. Predicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy this requirement. Congress was concerned in RICO with long-term criminal conduct. Often a RICO action will be brought before continuity can be established in this way. In such cases, liability depends on whether the threat of continuity is demonstrated.

*Id.*

Under *Airlines Reporting Corp. v. Aero Voyers, Inc.*, 721 F.Supp. 579, 584 (S.D.N.Y.1989) (*"Airlines Reporting"*), there are five elements to consider in determining closed-ended continuity: (1) the length of time of the racketeering acts; (2) the number of alleged racketeering acts; (3) the complexity of the scheme; (4) the number of participants; and (5) the number of victims. *Id.* at 584.

Under these criteria, the Second Amended Complaint alleges no facts to establish continuity. References to other communications in Browning's opposition papers notwithstanding, the Second Amended Complaint alleges only one purported racketeering act by Rubin that occurred sometime in the month of September 1987. In addition, Browning (although it also purports to sue on behalf of Associates) is the only "victim," if indeed there truly is a victim at all in this case.

Accordingly, the Second Amended Complaint does not satisfy the closed-ended concept of continuity, and therefore has not pleaded facts that meet the fundamental requirement of continuity of a racketeering pattern. Moreover, since only one RICO act has been alleged against Rubin, the "relatedness" requirement established in *Sedima* has also not been satisfied. Therefore, Browning's RICO claim against Rubin must be dismissed.

C. *Failure To Plead Violations Of §§ 1962(b)–(d)*

■ A RICO conspiracy requires plaintiffs to allege an agreement to violate one of RICO's substantive provisions. *United States v. Benevento*, 836 F.2d 60, 72 (2d Cir.1987).

■ RICO § 1962(b) prohibits acquiring or maintaining an interest in or control of an enterprise through a pattern of racketeering activity. Therefore, that subsection of RICO requires proof of a nexus between the alleged pattern of racketeering activity and the interest or control obtained thereby. *E.g., Litton Industries, Inc. v. Lehman Brothers Kuhn Loeb Inc.*, 709 F.Supp. 438, 452 (S.D.N.Y.1989). In addition, it also requires evidence of a "causal connection" between the defendant's interest or control and the plaintiff's injuries. *Id.*

■ The Second Amended Complaint fails to plead the necessary elements of a § 1962(b) claim against Rubin and fails to allege that Rubin acquired or maintained an interest in the purported enterprise through a pattern of racketeering activity.

In *McCain v. Phoenix Resources, Inc.*, 1989 WL 146212 (S.D.N.Y.1989) (Kram, J.), the court found that § 1962(b) is, "directed toward illicit takeovers of preexisting businesses ..." *Id.* at 16. Here, Browning has not—indeed cannot—allege that Rubin was engaged in an illicit takeover or the maintenance of control over an alleged RICO "enterprise."

■ Section 1962(c) prohibits conducting or participating in an enterprise's affairs through a pattern of racketeering activity. In order to state a claim under this RICO section, Browning must allege, among other things, that its injuries were proximately caused by Rubin's alleged racketeering activity. *See Hecht v. Com-*

*merce Clearing House, Inc.,* 897 F.2d 21, 23 (2d Cir.1990) ("*Hecht*").

■ Here, Browning does not allege facts which demonstrate its losses or that they were caused by Rubin as opposed to Rosenshein.

■ The Second Amended Complaint also alleges a violation of § 1962(d) in that Rubin and the other defendants "conspired" to violate § 1962(b) and/or (c). As one court observed:

> to be convicted as a member of an enterprise conspiracy, an individual by his words or actions, must have objectively manifested an agreement to participate, directly or indirectly, in the affairs of an enterprise through the commission of two or more predicate crimes.

*Laterza,* 581 F.Supp. at 413 [quoting, *United States v. Elliott,* 571 F.2d 880, 903 (5th Cir.), *cert. denied,* 439 U.S. 593, 99 S.Ct. 349, 58 L.Ed.2d 344 (1978) (emphasis omitted) ].

Thus, to state a conspiracy claim under RICO, Browning must set forth facts showing the existence of an agreement to commit two predicate acts. *See United States v. Ruggiero,* 726 F.2d 913, 921 (2d Cir.), *cert. denied,* 469 U.S. 831, 105 S.Ct. 118, 83 L.Ed.2d 60 (1984). Here, Browning has not alleged the existence of any agreement by Rubin to commit prohibited conduct. Browning does not allege facts which would even remotely suggest a conspiracy by Rubin.

In sum, Browning has not properly pleaded a claim against Rubin under § 1962.

### D. *Standing*

■ RICO confers standing on "any person injured in his business or property by reason of a violation of section 1962." 18 U.S.C. § 1964(c). Consequently, in order to have standing, Browning must show: (1) a violation of Section 1962; (2) injury to business or property; and (3) causation of the injury by the violation. *See Hecht,* 897 F.2d at 21; *see also O'Mally v. O'Neill,* 887 F.2d 1557, 1561 (11th Cir.1989), *cert. denied,* — U.S. —, 110 S.Ct. 2620, 110 L.Ed.2d 641 (1990). Even when the factual allegations of the Second Amended Complaint are construed in the light most favorable to Browning, *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974), not one of the three elements set forth in *Hecht* is satisfied.

■ The Second Amended Complaint fails to allege injury to the business or property of Browning caused by Rubin. Browning admits that it refused to honor the capital call and therefore Browning does not allege facts which show that its losses were caused by Rubin.

Accordingly, having failed to allege a § 1962 violation, injury and causation, Browning's RICO claim against Rubin must be dismissed for lack of standing.

### E. *Browning's Discussion Of Accountants Standard Of Care For Negligence No Meaningful Guidance Here*

Browning has cited authorities relating to accountant liability for negligence. However, here the claims against Rubin are for violations of RICO based upon mail and/or wire fraud and/or aiding and abetting mail and/or wire fraud.

Claiming that Rubin had a fiduciary relationship with Browning (a "fact" that is not alleged in the Second Amended Complaint), Browning quotes *Beck v. Manufacturers Hanover Trust Co.,* 645 F.Supp. 675 (S.D.N.Y.1986), for the proposition that the mail or wire fraud statutes "are violated when a fiduciary conceals 'material information which he is under a duty to disclose to another under circumstances where the nondisclosure could or does result in harm to the other.'" *Id.* at 680 [quoting *United States v. Bronston,* 658 F.2d 920, 926 (2d Cir.1981), *cert. denied,* 456 U.S. 915, 102 S.Ct. 1769, 72 L.Ed.2d 174 (1982) ]; *see also* Browning's Memorandum of Law at p. 22.

However, there are no facts alleged in the Second Amended Complaint demonstrating that Rubin owed Browning any duty whatsoever nor any factual allegations that Rubin in any way concealed anything from Browning.

#### F. The Grant Of Browning's Motion To Amend In State Court Is Not Dispositive

Browning urges that Justice Davis' decision permitting the Second Amended Complaint containing the RICO claims is dispositive of this motion. Browning's motion to amend, filed in the state court, made but brief references to the Rubin and Wilner defendants. Justice Davis' order by its terms simply permitted the addition of a RICO claim against the existing defendants:

> Upon the foregoing papers it is ordered that this motion of plaintiff to amend the amended complaint, to add a claim of iolation [sic] of the Racketeering Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1961, et seq., is granted.

The state court then concluded that Browning' RICO claim is almost identical to that found in *Procter & Gamble*, apparently not recognizing the pleading problems relating to Rubin and Wilner.

*Procter & Gamble v. Big Apple Indus. Bldgs., Inc.*, 879 F.2d 10 (2d Cir.1989), *cert. denied*, 493 U.S. 1022, 110 S.Ct. 723, 107 L.Ed.2d 743 (1990) ("*Procter & Gamble*"), is similar to this action as to the Rosenshein defendants. However, *Procter & Gamble* did not involve RICO allegations against an accountant or an engineer hired by a third party. In addition, *Procter & Gamble* did not involve allegations against the engineer hired by the bank providing the construction loan to ensure phases of construction were complete before further funds would be released. The only professional named as a defendant was a lawyer who made affirmative misrepresentations to the plaintiff. *Procter & Gamble* does not support Browning's claims against Rubin or Wilner.

#### II. The Complaint Fails To State A RICO Claim Against Wilner

#### A. Browning Does Not Satisfy Predicate Acts Requirement

■ As already set forth, to find violations of the mail and wire fraud statutes that satisfy the "predicate acts" requirement of RICO, Browning must satisfactorily allege: (1) participation in a scheme to defraud, and (2) knowing use of the interstate mails or interstate wires in furthering the scheme. *Connors, supra,* Part I.2, 666 F.Supp. at 450; *see also* 18 U.S.C. § 1341.

The Second Amended Complaint alleges only that Wilner did not send the monthly reports he prepared for EAB to Browning. Browning has not alleged that Wilner used the mails to further the alleged conspiracy or that Wilner consciously aided and abetted any mail fraud perpetrated by Rosenshein. In addition, the Second Amended Complaint does not allege that Wilner's reports to EAB contained any intentional misrepresentations but only that they contained information substantially different from the inaccurate reports Rosenshein sent to Browning (Second Amended Complaint at ¶ 65). Wilner's reports to EAB, presumably delivered by mail, are not alleged either to be fraudulent or intended to defraud Browning.

■ Browning has stated a new basis for scienter, namely that Wilner "should have reasonably anticipated" or "foreseen that his actions would result in use of the mails or wires" (Browning's Memorandum of Law at 16–20). Even this contention, that the mails or wires would be used, does not satisfy the statutory requirements of mail fraud in the absence of false or misleading information or knowing participation in the fraud.

Section 1341 of the Mail and Wire Fraud statute mandates that plaintiffs assert and prove:

> The specific intent to defraud by either devising, participating in or abetting the scheme.

18 U.S.C. § 1341. Not only does Wilner allege his monthly inspection reports were required by EAB to be forwarded only to the bank, but by unrebutted affidavit he denies being aware of Browning's existence at the time of the events in question.

##### 1. Browning Fails To Meet 9(b) Requirements

As stated above, where the predicate acts of a RICO claim sound in fraud, the

pleading of those predicate acts must satisfy the requirement of Fed.R.Civ.P. 9(b). *Morin,* 711 F.Supp. at 111.

To comply with the requirements of Fed. R.Civ.P. 9(b), plaintiffs must state the time, place, content of the fraudulent misrepresentations, and the individual roles of each party to the fraud. *Luce,* 802 F.2d at 58.

■ The allegations in the Second Amended Complaint fail to supply a definite identification of any fraudulent misstatements, inaccuracies, omissions or nondisclosures supposedly made by Wilner. Indeed, there are absolutely no allegations in the Second Amended Complaint that there were false statements in any of Wilner's reports or elements to set forth a claim of fraud. Moreover, allegations that Wilner "knew or should have known" and "could not have been unaware" are insufficient to show Wilner's specific intent to defraud plaintiffs. *See Morin v. Trupin,* 711 F.Supp. at 110–11; *see also Beauford v. Helmsley,* 865 F.2d 1386, 1392 (2d Cir. 1989) (on remand to district court, RICO complaint must comply with 9(b) requirements).

In the Second Circuit, a statement of facts upon which belief is founded must accompany fraud allegations that are stated generally or where plaintiffs maintain that facts are peculiarly within the opposing party's knowledge. *Stern v. Leucadia Nat. Corp.,* 844 F.2d 997, 1003 (2d Cir.), *cert. denied,* 488 U.S. 852, 109 S.Ct. 137, 102 L.Ed.2d 109 (1988), *citing, Luce,* 802 F.2d at 54 n. 1. Plaintiffs also do not allege in the Second Amended Complaint that the information is solely within the scope of Wilner's knowledge. *See, e.g., Decker v. Massey–Ferguson, Limited,* 534 F.Supp. 873, 877 (S.D.N.Y.1981).

Here, as in the amended complaint, *Stern,* 844 F.2d at 1004, the allegations did not pass muster under Fed.R.Civ.P. 9(b) because it does not "suffice to assert conclusory suspicions as to defendants' motives." *Id.* at 1004.

In its Memorandum of Law at 23, Browning states:

Wilner almost certainly knew that plaintiffs were joint venturers in the project and that they would rely upon the Bank's reports on the construction costs. Moreover, Wilner knew or had reason to know that the data in the reports was inaccurate.

Nowhere does Browning allege a factual foundation for the conclusory allegations of scienter, nor any motive nor basis to infer intent by Wilner to participate in any alleged fraud.

2. Browning Fails To Plead Aiding And Abetting Liability

Browning also seeks to allege in the alternative the Wilner aided and abetted the mail and wire fraud RICO violations, stating:

[I]n conducting and participating in the affairs of the enterprise and conspiring to do so, defendants Rosenshein, ... Rubin, KCGR, [and] Wilner ... performed or aided and abetted the performance of two or more predicate acts under the federal wire fraud statutes ...

(Second Amended Complaint at ¶ 107).

However, in opposition to Wilner's motion, Browning states:

It cannot be disputed that Wilner either deliberately or recklessly through tortious behavior, aided and abetted Rosenshein by approving Rosenshein's fraudulent reports.

■ A proper pleading of "aiding and abetting" a principal in the furtherance of a crime or predicate act requires an allegation of some specified, knowing, affirmative action to assist the unlawful act. *See Laterza,* 581 F.Supp. at 412. In the Second Amended Complaint none such is pleaded.

■ Here, not only does Browning fail to allege that Wilner had actual and specific knowledge of Rosenshein's purported "primary violations" but the Second Amended Complaint also fails to identify what, if any, assistance Wilner gave to Rosenshein or the manner in which Wilner's inspection reports to EAB lent assistance to the purported fraud.

### B. *Browning Does Not Meet Other Elements of RICO*

■ Furthermore, Browning does not allege that Wilner knowingly and wilfully engaged in or aided and abetted a scheme to intentionally defraud plaintiffs that gave rise to the existence of a "pattern of racketeering activity."

As stated above, in *Northwestern Bell*, 492 U.S. at 229, 109 S.Ct. at 2893, the Court held that the harm to plaintiff as a consequence of defendants' activities must have either occurred repeatedly during a defined period of time in the past (*i.e.*, "closed-ended"), or as the result of acts that threaten future harm (*i.e.* "open-ended").

The allegations in the Second Amended Complaint fall far short of meeting either definition of continuity. One paragraph refers to Wilner's limited participation in the project:

> EAB retained an engineering firm, Alfred Wilner Inc. ... to conduct monthly inspections of the site. The monthly inspections were conducted by Wilner ... and Wilner ... prepared monthly reports regarding the progress of construction.

Second Amended Complaint at ¶ 69.

After 1987 when the project was complete, Wilner had no association with the project. There could not be any further participation by Wilner in any scheme to defraud and, therefore, Wilner's activities do not conform to an open-ended pattern.

Browning has not alleged any nexus known to Wilner between his reports to EAB and Rosenshein's reports to Browning of which Wilner was unaware. Consequently, Browning has not pled any activity of continual fraud by Wilner over a closed period of time.

For the first time in response to Wilner and Rubin's motions, Browning states that:

> [A]ll of the predicate acts alleged in plaintiff's [sic] complaint were committed in furtherance of one main purpose: theft; and a single victim: Browning. The predicate acts were systematically committed in a predetermined manner.

(Plaintiffs' Memorandum of Law at 28). Yet, elsewhere Browning states that it cannot be "absolutely precise with respect to the details of [Wilner's] predicate acts ..."

Nor do Browning's allegations satisfy the criteria for relatedness necessary for establishing a pattern as summarized in *Procter & Gamble* in terms of similarity of goals, methods of accomplishing those goals, repetitiousness and closeness of temporal proximity between Rosenshein and Wilner's acts in furtherance of some goal. *See also, United States v. Indelicato*, 865 F.2d 1370, 1382 (2d Cir.1989). Allegations about what Wilner "should have known," or "knew" or "must have known" fail to establish a pattern of racketeering activity within the meaning of the RICO statute.

In *Procter & Gamble*, on which Browning also relies as to its claim against Wilner, the plaintiff's allegations directly refuted the view that defendants' fraudulent activities were unrelated or disconnected. 879 F.2d at 18. Here, Rosenshein's progress reports to Browning and Wilner's reports to EAB, appear on their face to be disconnected (Second Amended Complaint at ¶ 65, ¶ 66 and ¶ 67).

■ Moreover, the Second Amended Complaint fails to satisfy RICO's enterprise requirement. Wilner has not been shown by Browning's allegations to have been in any way "associated together" with Rosenshein within the meaning of *United States v. Turkette*, 452 U.S. 576, 101 S.Ct. 2524, 69 L.Ed.2d 246 (1981) in an enterprise according to 18 U.S.C. § 1962.

*Turkette* requires there be allegations that individuals associated with the enterprise functioned as a "continuing unit." 452 U.S. at 583, 101 S.Ct. at 2528. In the Second Amended Complaint, Browning does not indicate how, where or in what capacity Wilner functioned as a unit along with Rosenshein. The Second Amended Complaint merely states that:

> Wilner ... knew or should have known, at each time that Rosenshein's monthly application for a payment was approved by them, that the project could not be completed for the balance of the construction loan remaining ...

(Second Amended Complaint at ¶ 70). Such an allegation does not set forth that Wilner acted in any manner as a "continuing unit" with any other defendant.

According to Wilner's unrebutted affidavit, he, as inspecting engineer, was not required to certify any costs to EAB but to report the percentage of construction completed. The loan between EAB and Rosenshein and any subsequent increases were negotiated between those parties alone. EAB notified Wilner after these increases were approved. Moreover, Wilner had no information concerning the amount of equity or capital contributed to the construction project nor amounts paid subcontractors. There is, therefore, no allegation tending to suggest that Wilner was functioning as a unit with Rosenshein.

### C. *Failure To Plead Statutory Violations*

 As stated above, a RICO conspiracy requires plaintiffs to allege an agreement to violate one of RICO's substantive provisions. *Benevento*, 836 F.2d at 72. Browning has failed to allege Wilner violated or committed any underlying intentional tort or predicate act as defined in 18 U.S.C. § 1962(a), (b) or (c), and has failed to allege that Wilner committed any fraud. Therefore, as a matter of law, any conspiracy claim whether under New York law or RICO must fail.

Subsection 1962(d) of the RICO statute embodies the standard for determining whether plaintiffs have adequately pled a claim for RICO conspiracy against Wilner. That provision requires that plaintiffs allege with specificity that defendants agreed to commit a predicate act defined in § 1962(d). As the Second Circuit has stated:

> Because the core of a RICO civil conspiracy is an agreement to commit predicate acts, a RICO civil conspiracy complaint, at the very least, must allege specifically such an agreement.

*Hecht*, 897 F.2d at 25; *Morin*, 711 F.Supp. at 111–12 (under § 1962(d), mere allegations of agreement to commit predicate acts are insufficient to support a charge of RICO conspiracy). Here, no "meeting of the minds" or agreement is alleged, nor can any be reasonably inferred from the allegations concerning Wilner in the Second Amended Complaint. With regard to Wilner, the allegations are merely that:

> Wilner ... abetted Rosenshein and Rosenshein Associates in their fraud on Browning by approving Rosenshein's request for payment each month ... Wilner and AW knew or should have known, at each time that Rosenshein's monthly application for payment was approved by them, that the project could not be completed for the balance of the construction loan remaining ...

(Second Amended Complaint at ¶ 70). Browning insufficiently alleges that Wilner "knew or should have known" in the absence of any allegations that Wilner agreed or knowingly entered into an agreement to commit any predicate act or defraud plaintiffs.

The acts in the Second Amended Complaint alleged to have been undertaken by Wilner do not give rise to a circumstantial inference of conspiracy.

Instead of satisfying the well-established RICO requirement of pleading a specific agreement, Browning states simply that:

> The requests for payment, submitted by Rosenshein, contain blatant falsities and inconsistencies, of which Wilner could not have been unaware.

(Browning's Memorandum of Law at 5). Therefore, Browning has failed to plead a violation of § 1962(d) with respect to Wilner.

### D. *Browning Fails To Plead Injury With Respect To Wilner*

 Wilner also urges dismissal of the Second Amended Complaint in the absence of injury to Browning resulting from his acts. As stated above, Browning must plead an injury in order to have standing to assert a RICO claim. 18 U.S.C. § 1964(c).

Browning now seeks to establish that it sustained injury by loss of interest in the venture, stating:

> [D]efendants' acts resulted in not only the acquisition of a substantial interest

in the joint venture through the theft of millions of dollars of the funds designated for the project, but in the acquisition of the entire project by fraudulently depriving plaintiffs of its share in the Venture ...

Browning's Memorandum of Law at 30. However, this claim is not pled; moreover, Browning had no obligation to guarantee construction financing and was paid $2.9 million for its interest in the property, according to the terms of the Agreement. No link is alleged between the alleged loss and the acts of Wilner.

Further, with respect to the conspiracy claim, it is well-settled law in New York that a plaintiff, when alleging either a civil or RICO conspiracy, must properly plead an underlying intentional tort. Justice Edward Weinfeld succinctly stated that:

> [T]he gravamen of a claim of conspiracy is the underlying independent tort, and if the independent tort has not been adequately pleaded, the conspiracy claim will also fail.

*Demalco Ltd. v. Feltner*, 588 F.Supp. 1277, 1278 (S.D.N.Y.1984).

Therefore, for all the above reasons the Second Amended Complaint fails to state a RICO claim against Wilner.

**III. Leave To Replead Is Not Appropriate**

■ This action has been pending against Rosenshein for over two years, discovery has been extensive and the depositions of the principals, other than Wilner, have been taken. At the heart of the action is the dispute between the co-venturers, Browning and Rosenshein. On the record submitted thus far there is no basis to believe further discovery would supply the basis for further pleading.

Although leave to replead is not granted for the reasons stated, it may be sought by way of an appropriate motion.

**IV. The Conversion Of The 12(b)6 Motion**

Since all parties submitted evidentiary material outside the pleadings by way of affidavits and deposition citations, the 12(b)(6) motion of Rubin and Wilner has been converted, pursuant to Rule 12(b), to

a motion for summary judgment to dismiss the complaint which is granted on the findings of fact and conclusions of law as set forth above.

Browning is therefore granted leave to submit any appropriate factual materials and memorandum by way of a further submission with respect to the grant of summary judgment to Rubin and Wilner.

*Conclusion*

The motions by Rubin and Wilner to dismiss the complaint under Rules 12(b)(6), 9(b) and 56, Fed.R.Civ.P., are granted. Settle judgment on notice.

It is so ordered.