**Simeon MORIN, et al., Plaintiffs,**

v.

**Barry H. TRUPIN, et al., Defendants.**

**Michael P. ALBERTI, M.D., et al., Plaintiffs,**

v.

**Barry E. TRUPIN, et al., Defendants.**

Nos. 88 Civ. 5743 (RWS), 90 Civ. 3475 (RWS).

United States District Court, S.D. New York.

Sept. 15, 1993.

Fink Weinberger, P.C., New York City (Neal A. DeYoung, Stephen E. Powers, Farrell C. Glasser, of counsel), for plaintiffs.

D'Amato & Lynch, New York City (Robert E. Kushner, Stephen F. Willig, of counsel), for defendants Mintz, Fraade & Zeiger, Frederick M. Mintz and Alan Fraade.

Serchuk & Zelermyer, White Plains, NY (Steven A. Coploff, of counsel), for defendants Jackson–Cross Co., George C. Hoez and Russell E. Snyder.

## OPINION

SWEET, District Judge.

Mintz, Fraade, and Zeigler, P.C. ("the Mintz, Fraade Defendants" or "the law firm") have moved for the dismissal of the Plaintiffs' RICO claims in light of the recent decision of the Supreme Court in *Reves v. Ernst & Young,* —— U.S. ——, 113 S.Ct. 1163, 122 L.Ed.2d 525 (1993). For the reasons given below, this motion is granted. Counsel for another group of defendants named only in the *Alberti* action, the real estate appraisers Jackson–Cross Company, Russell Snyder and George Hoez (the "Jackson–Cross Defendants"), originally joined in this motion by letter to the court dated May 12, 1993, but have since settled with the Plaintiffs, rendering their motion moot.

### The Parties

The *Alberti* Plaintiffs are investors in a New York limited partnership known as the Sacramento Office Park Associates ("Sacramento Associates"), organized to own, operate and lease a two-building office park complex in Sacramento, California referred to as the Butano Buildings (the "Butano Property"). The *Morin* plaintiffs are investors in other real estate limited partnerships, referred to as the 118, 119, 119M, 130 and 218 syndications, formed to divide up and offer to the public interests in three office buildings located in Sarasota, Florida, Grand Rapids, Michigan, Dallas, Texas, and in warehouses in Indianapolis, Indiana. Apart from the manner in which interlocking interests in the four properties were distributed among the different limited partnerships, the *Morin* plaintiffs alleged that the syndications were structured in precisely the same way as the Sacramento offering in *Alberti.*

Mintz, Fraade is a New York law firm which is alleged to have acted as counsel to partnerships and corporations controlled by

Barry H. Trupin ("Trupin"), the founder promoter of all these tax shelters, and it has been named as a defendant in both the *Morin* and the *Trupin* actions. Mintz, Fraade is alleged to have provided tax opinions and tax information in private placement memoranda prepared for these offerings, and to have represented Trupin in partnership audit proceedings before the I.R.S.

### Background

Familiarity with the underlying disputes and principal parties in these actions is assumed. *See, e.g., Morin v. Trupin,* 711 F.Supp. 97 (S.D.N.Y.1989) (filed April 13, 1989); *Morin v. Trupin,* 728 F.Supp. 952 (S.D.N.Y.1989) (filed December 13, 1989); *Morin v. Trupin,* 738 F.Supp. 98 (S.D.N.Y. 1990) (filed May 4, 1990); *Morin v. Trupin,* 747 F.Supp. 1051 (S.D.N.Y.1990) (filed September 29, 1990); *Morin v. Trupin,* 778 F.Supp. 711 (S.D.N.Y.1991) (filed November 18, 1991); and *Morin v. Trupin,* 799 F.Supp. 342 (S.D.N.Y.1992) (filed July 28, 1992). *See also Ahmed v. Trupin,* 781 F.Supp. 1017 (S.D.N.Y.1992); *Ahmed v. Trupin,* 809 F.Supp. 1100 (S.D.N.Y.1993)

In brief, in both actions the Plaintiffs have alleged that Trupin organized, ran, and syndicated limited partnerships in the businesses of real estate and equipment leasing in order to generate profits and tax losses for limited partners. The *Alberti* action involves the syndication of limited partnership shares in one commercial property located in Sacramento, California. The *Morin* action involves the syndication of limited partnership shares in four commercial real estate properties and shares in certain equipment leasing trusts. Certain of the tax benefits alleged promises to investors in the equipment leasing trusts have apparently been disallowed by the I.R.S. All of the commercial properties have been foreclosed upon. The Plaintiffs in *Alberti* and *Morin* have filed suit alleging violations of Section 10(b) of the 1934 Securities Exchange Act (the "10(b) action"), 15 U.S.C. § 78j(b) and Rule 10(b)–5, 17 C.F.R. § 240.10(b)–5, violations of the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1962(a)–(d), and common law claims including misrepresentations and commonlaw fraud.

### Discussion

#### I. Standards for Dismissal Under Rule 12(b)(6)

■ On a Rule 12(b)(6) motion to dismiss, the factual allegations of the complaint are presumed to be true and all factual inferences must be drawn in the plaintiff's favor and against the defendants. *See Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); *Cosmas v. Hassett,* 886 F.2d 8, 11 (2d Cir.1989); *Dwyer v. Regan,* 777 F.2d 825, 828–29 (2d Cir.1985). Accordingly, the factual allegations considered here and set forth below are taken from the Plaintiffs' Complaints and do not constitute findings of fact by the Court. They are presumed to be true only for the purpose of deciding the present motions.

■ A court may not dismiss a complaint unless the movant demonstrates "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957). *Accord Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984) (quoted in *H.J., Inc. v. Northwestern Bell Tel. Co.,* 492 U.S. 229, 249–50, 109 S.Ct. 2893, 2905–06, 106 L.Ed.2d 195 (1989).

#### II. RICO

■ The substantive provisions of the Racketeer Influenced and Corrupt Organization Act ("RICO"), 18 U.S.C. § 1962(a)–(d), outlaw four types of racketeering-related activities in the sections which the Plaintiffs allege have been violated. The Court of Appeals for the Second Circuit has described the statute in the following manner:

Section 1962(a) prohibits using income received from a "pattern of racketeering activity" to acquire an interest in or establish an enterprise engaged in or affecting interstate commerce. Section 1962(b) proscribes the acquisition or maintenance of any interest in an enterprise "through" a pattern of racketeering activity. Section 1962(c) prohibits conducting or participating in the conduct of an enterprise through a pattern of racketeering activity. Section

1962(d) proscribes conspiring to violate subsection (a), (b), or (c).

*Hecht v. Commerce Clearing House, Inc.,* 897 F.2d 21, 23 n. 1 (2d Cir.1990). To state a claim under RICO, a plaintiff must allege, in addition to the defendant's violation of 18 U.S.C. § 1962, that there has been some injury to his business or property by reason of a defendant's violation of § 1962, *see* 18 U.S.C. § 1964(c); *Sedima, S.P.R.L. v. Imrex Co.,* 473 U.S. 479, 496, 105 S.Ct. 3275, 3285, 87 L.Ed.2d 346 (1985); *Hecht,* 897 F.2d at 23; *Burdick v. American Express Co.,* 865 F.2d 527, 529 (2d Cir.1989); *In re Gas Reclamation, Inc. Secur. Litig.,* 659 F.Supp. 493, 518 (S.D.N.Y.1987).

In addition, the United States Supreme Court has interpreted § 1961(5) to require, in addition to a showing of "at least two acts of racketeering activity," allegations supporting continuity plus relationship. Continuity is both a closed and open-ended concept, referring either to a closed period of repeated conduct, or to past conduct which threatens repetition. *H.J. Inc. v. Northwestern Bell Telephone Co.,* 492 U.S. 229, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989). Although,

> [t]he threat of continued activity of the sort of conduct alleged in the amended complaint is particularly unlikely, given the fact ... that the Tax Reform Act of 1986 came close to eliminating the deductibility of losses claimed by participants in tax shelter investments such as this Partnership,

*Ochs v. Shearson Lehman Hutton Inc.,* 768 F.Supp. 418, 426 (S.D.N.Y.1991), this Court need not and will not reach the issue. Because the Plaintiffs have failed to state any claims under § 1962(a)–(d), they do not have standing under *Hecht* to bring any claims under civil RICO.

The Plaintiffs' complaints in both *Morin* and *Alberti* do not distinguish the racketeering activities of the lawyers and accountants from the other defendants associated with Trupin's organization. Both complaints allege that the racketeering activity attributable to all defendants consists of "the series of securities frauds" and the "multiple acts of indictable mail fraud in connection with these securities frauds," (*Morin* Complaint at ¶ 384; *Alberti* Complaint at ¶ 278) set forth in each Complaint. According to the Plaintiffs, the partnerships themselves and the Trupin organization form the enterprises and the association-in-fact required by RICO. In the *Morin* complaint, "the defendants organized" the corrupt organizations partly by "(v) retaining attorneys and accountants with preexisting affiliations with the Rothschild Group to perform services for the 118–119, 130 Series and 218 Limited Partnerships and paying their fees out of the proceeds of these offerings," (*Morin* Complaint at ¶ 387), although the lawyers and accountants are reincluded among the racketeering defendants by "knowingly" receiving "payments described as professional fees," *Morin* complaint at ¶ 390. In the *Alberti* complaint, where the partnership Sacramento Associates is alleged to be the enterprise, the Plaintiffs simply list "the accountants and the Mintz, Fraade Defendants, the attorneys, who were employed by the Sacramento Associates Limited Partnership and who received professional fees," in the general list of defendants responsible for the control of and investment in the enterprise. The conspiracy claim in each is that all the "Defendants agreed with each other to maintain influence in and control of the Syndication Enterprise," *Morin* Complaint at ¶ 434; *Alberti* Complaint at ¶ 313. Neither complaint alleges facts which implicate the lawyers or the accountants in any particular agreements, plans, or conspiracies to commit any particular acts.

### A. The Effect of Reves Upon Section 1962(c)

The Mintz, Fraade Defendants argue that the holding in *Reves* requires this Court to dismiss "the RICO claims in the above-referenced actions." In *Reves,* the Supreme Court decided a conflict between the circuits by holding that the "operation and management" test adopted by the Courts of Appeals for the Eight Circuits and the District of Columbia Circuit was the correct standard for liability under § 1962(c) [1]:

---

**1.** Section 1962(c) makes it unlawful "for any

person employed by or associated with [an inter-

The narrow question in this case is the meaning of the phrase "to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs".... Once we understand the word "conduct" to require some degree of direction and the word "participate" to require some part in that direction, the meaning of § 1962(c) comes into focus.... [S]ome part in directing the enterprise's affairs is required. The "operation or management" test expresses this requirement in a formulation that is easy to apply.

*Reves*, — U.S. at ——, 113 S.Ct. at 1163 (dismissing civil RICO count under § 1962(c) where accounting firm failed to alert shareholders and directors of potential worthlessness of Co-op gasohol plant).

Relying on a dictionary definition of "conduct" as "mean[ing] to lead, run, manage, or direct," the court explicitly rejected the view that "almost any involvement in the affairs of an enterprise" [would state a claim]..... Instead, *Reves* adopted an "operation or management" test....

*Amalgamated Bank of New York v. Marsh,* 823 F.Supp. 209, 219 (S.D.N.Y.1993) (holding the *Reves* new standard narrower than existing Second Circuit precedent). Here, as in *Amalgamated* and as in *United States v. Altman,* 820 F.Supp. 794, 795 (S.D.N.Y.1993) (same), there is no suggestion that the Mintz, Fraade defendants ever directed anyone to do anything. The Plaintiffs have alleged that the Mintz, Fraade Defendants provided counsel and advice, but nothing more. Even if this court found that "these defendants had substantial persuasive power to induce management to take certain actions," this is still "not equivalent to having the power to 'conduct or participate directly or indirectly in the conduct in the affairs of those corporations,'" *Strong & Fisher Ltd. v. Maxima Leather, Inc.,* 1993 WL 277205 1993 U.S.Dist. LEXIS 10080 (S.D.N.Y. July 22, 1993) (dismissing RICO claim against major creditors) quoting *Reves, supra.* In other words, the Mintz, Fraade Defendants' conduct consisted of providing legal services to the general partners and to the limited partnership.

This is not, under *Reves,* sufficient to support liability under § 1962(c). Therefore, the third and fourth claims in both complaints in *Morin* and in *Alberti* are hereby dismissed pursuant to *Reves* to the extent that these allege a violation of 18 U.S.C. § 1962(c).

### B. *Sections 1962(a) and (b)*

Although *Reves* concerns only 18 U.S.C. § 1962(c), the Mintz, Fraade defendants argue that, once the counts under § 1962(c) are dismissed, the other RICO counts must be dismissed as well. In the two previous opinions which refused to dismiss the charges against the law firm, the RICO claims were allowed to stand simply because the Plaintiffs had alleged the underlying predicate acts of securities fraud formed a pattern, *see Morin v. Trupin,* 809 F.Supp. 1081, 1093 (S.D.N.Y. 1993); *Morin,* 778 F.Supp. at 725. Alleging the existence of two predicate acts and alleging they were part of a "pattern" of racketeering activity merely states a claim under 1962(c). Even if the allegedly misleading tax opinions by the Mintz, Fraade defendants were legally sufficient to show they were "conducting" the racketeering enterprise, then the Mintz, Fraade Defendants would be implicated only under 1962(c). *Cf. In re Gas Reclamation,* 659 F.Supp. at 511 ("Because the real nature of the Abish Investors' RICO claim appears to flow from the allegation that the predicate acts induced them 'to invest in [the] Units' ... we believe that section 1962(c), not section 1962(a), is the applicable statutory provision.") Neither previous opinion had addressed whether the plaintiffs had alleged facts which indicated that the Mintz, Fraade Defendants invested any income from a racketeering enterprise, used racketeering activity to control or maintain an interest in an enterprise, or conspired to violate any sections of 18 U.S.C. § 1962(a)–(d). Upon closer examination of the Plaintiffs' complaints in *Morin* and in *Alberti,* it is apparent that they do not.

To state a claim under Section 1962(a), the Plaintiffs must allege that (1) income derived from a pattern of racketeering (2) has been used or invested by a person (3) to acquire an interest in, establish or

---

state] enterprise ... to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs though a pattern of racketeering activity."

operate (4) an enterprise, and that the Plaintiffs' injury was proximately caused "by reason of" the Mintz, Fraade Defendants' investment of racketeering income in an enterprise, *Ouaknine v. MacFarlane,* 897 F.2d 75, 82–83 (2d Cir.1990) (quoting 18 U.S.C. § 1964(a)). In the absence of allegations that any Plaintiff suffered injury resulting from the investment of racketeering proceeds, the Plaintiffs lack standing under § 1964(c) to recover for violations of § 1962(a).

■■■ "[T]he essence of a violation of § 1962(a) is not commission of predicate acts, but investment of racketeering income," *Ouaknine,* 897 F.2d at 83; *Guerrero v. Katzen,* 571 F.Supp. 714, 721 (D.D.C.1983), *aff'd,* 774 F.2d 506 (D.C.Cir.1985) In this Court, § 1962(a) only allows a plaintiff to sue for injuries which arise out of the use or investment of racketeering income, not merely for injuries based on racketeering activity, *Galerie, Furstenberg v. Coffaro,* 697 F.Supp. 1282, 1288–89 (S.D.N.Y.1988). Actual investment of the racketeering income in the enterprise under § 1962(a) must injure the plaintiff in this Court, *Vista Co. v. Columbia Pictures Indus., Inc.* 725 F.Supp. 1286, 1300–01 (S.D.N.Y.1989); *In re Gas Reclamation,* 659 F.Supp. at 511; *De Muro v. E.F. Hutton,* 643 F.Supp. 63, 67 (S.D.N.Y.1986). The Plaintiffs have not alleged how the Mintz, Fraade Defendants "reinvested" their fees, nor that they used racketeering activities to control any other enterprises. The professional defendants have merely been grouped in with every other defendant in all of the plaintiffs' RICO claims in both complaints; and the sole difference in the complaints is that in *Morin,* the lawyers "knowingly" received payments described as legal fees while the *Alberti* complaint itself refers to such payments as legal fees.

■■■ The Plaintiffs' complaint also fails to plead the necessary elements of a § 1962(b) claim against the Mintz, Fraade Defendants, for it fails to allege that these Defendants acquired or maintained an interest in any enterprise through a pattern of racketeering activity. They have put before the Court no allegation that the Mintz, Fraade Defendants had a right, title, or share of any of the

partnerships, or control over the security interests or income flow, *cf. Vista,* 725 F.Supp. at 1300 (plaintiffs successfully allege violation of § 1962(b) where defendant controlled business and income). The Complaints allege only that the Mintz, Fraade Defendants provided legal advice to Trupin and Trupin-controlled entities, which by itself does not amount to an illicit takeover of a preexisting business. *Browning Ave. Realty Corp. v. Rosenshein,* 774 F.Supp. 129, 140 (S.D.N.Y.1991). The Complaints fail to allege any causal connection between any interest or control acquired by the Mintz Fraade Defendants and their injuries.

As the plaintiffs have not alleged facts showing that they were injured by reason of the Mintz, Fraade Defendants' "use or investment of income derived from racketeering activity," 18 U.S.C. § 1962(a), or by reason of any "acquisition" which the Mintz, Fraade Defendants made through racketeering acts, 18 U.S.C. § 1962(b), these claims are dismissed.

### C. *Conspiracy Under Section 1962(d)*

■■■ Finally, the Plaintiffs have alleged nothing which links the professional defendants to a conspiracy besides the bald assertion that if they committed securities fraud, they must have conspired to do so through a pattern of racketeering activity. Although parties who do not control the organization cannot be liable under § 1962(c), they may still conspire to do so and therefore be liable under § 1962(d), *see Jones v. Meridian Towers Apartments,* 816 F.Supp. 762 (D.D.C.1993).

■■■ Nonetheless, the Plaintiffs' allegations under § 1962(d) still fail. Because the core of a RICO civil conspiracy is an agreement to commit predicate acts, the complaint must specifically allege such an agreement. *Hecht,* 897 F.2d at 25; *Rose v. Bartle,* 871 F.2d 331, 366 (3rd Cir.1989); *Seville Indus. Machinery Corp. v. Southmost Machinery Corp.,* 742 F.2d 786, 792 n. 8 (3d Cir.1984), *cert. denied,* 469 U.S. 1211, 105 S.Ct. 1179, 84 L.Ed.2d 327 (1985). A previous opinion in this case dismissed allegations of a RICO conspiracy nearly identical to this one for precisely such a lack of specificity.

In *Morin v. Trupin*, 747 F.Supp. 1051, 1067 (S.D.N.Y.1990), this Court held that mere allegations of an agreement to commit the predicate acts is not sufficient to support a charge of conspiracy under § 1962(d). The Plaintiffs must allege that the defendants agreed to commit two or more RICO predicate acts, *Zaro Licensing, Inc. v. Cinmar, Inc.*, 779 F.Supp. 276, 283 (S.D.N.Y.1991); *Browning Ave.*, 774 F.Supp. at 141. *See also United States v. Rastelli*, 870 F.2d 822, 832 (2d Cir.), *cert. denied*, 493 U.S. 982, 110 S.Ct. 515, 107 L.Ed.2d 516 (1989); *United States v. Ruggiero*, 726 F.2d 913, 921 (2d Cir.), *cert. denied*, 469 U.S. 831, 105 S.Ct. 118, 83 L.Ed.2d 60 (1984). Because they have not alleged any facts demonstrating the existence of an agreement or conspiracy, the Plaintiffs have not plead a violation of § 1962(d) against the Mintz, Fraade defendants in either Complaint.

### Conclusion

For the reasons given above, the claims against the Mintz, Fraade Defendants pursuant to 18 U.S.C. § 1962(a)–(d) are hereby dismissed in both the *Morin* action and the *Alberti* action.

It is so ordered.